USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1780 MARY V. PRATT, Plaintiff - Appellant, v. KELLEY C. PHILBROOK, Defendant - Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Michael A. Ponsor, U.S. District Judge] ___________________ ____________________ Before Stahl and Lynch, Circuit Judges, ______________ and Woodlock,* District Judge. ______________ _____________________ Edward W. McIntyre for appellant. __________________ Paul G. Pino, with whom Clark, Balboni & Gildea was on brief ____________ _______________________ for appellee. ____________________ March 19, 1997 ____________________  ____________________ * Of the District of Massachusetts, sitting by designation. WOODLOCK, District Judge. At a settlement conference WOODLOCK, District Judge. _______________ with the trial judge, the parties announced they had agreed upon terms to resolve this case. The trial judge told them that he would enter a 60-day Settlement Order of Dismissal and invited them to return to him if problems arose during that time period which impeded consummation of the settlement. Within a day such problems arose but the parties did not alert the court. After sixty days passed and the trial court heard nothing further from the parties, the dismissal became final by operation of the settlement order. About three weeks later, plaintiff's counsel, who ultimately framed his failure to forestall the dismissal as an instance of excusable neglect under Fed. R. Civ. P. 60(b), began to seek to have the dismissal vacated and the case reopened. The trial judge declined, observing that if a settlement order of dismissal were vacated under such circumstances, the order would essentially be meaningless.  Although the trial judge's views are not unreasonable, the Supreme Court recently has signalled a substantial degree of elasticity in the definition of "excusable neglect." Accordingly, we remand this matter to the trial judge to consider whether the plaintiff has satisfied the latitudinarian standards for excusable neglect the Supreme Court has outlined. I I In Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. _________________________ _______________________ Partnership, 507 U.S. 380 (1993), the Supreme Court phrased the ___________ -2- question presented as whether an attorney's inadvertent failure to file a proof of claim in a Chapter 11 Bankruptcy reorganization case within the deadline set by the Court could constitute "excusable neglect" within the meaning of Fed. R. Bank. P. 9006(b)(1). Id. at 383.  ___ The Court declined to limit the "neglect" which might be excusable to those circumstances caused by intervening circumstances beyond a party's control. Rather, the Court concluded that "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness." Id. at 388. ___ The Court further indicated that the concept of "neglect" for purposes of Fed. R. Civ. P. 60(b) "encompass[es] situations in which the failure to comply with a filing deadline is attributable to negligence." Id. at 394.  ___ As to the requirement that the neglect be "excusable," the Court established a balancing test which requires an equitable determination "taking account of all relevant circumstances surrounding the party's omission." Id. at 395. ___ Such factors were found to include "the danger of prejudice to [an adverse party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Id. ___ -3- Pioneer appeared on its face to resolve only a narrow _______ issue of bankruptcy practice. But by construing "excusable neglect," a phrase used throughout the Federal Civil,1 Criminal2 and Appellate3 Rules of Procedure, Pioneer must be understood to _______ provide guidance outside the bankruptcy context.  That the Pioneer test for "excusable neglect" was _______ intended to extend beyond the bankruptcy context was emphasized by the Supreme Court last term in Stutson v. United States, 116 _______ _____________ S. Ct. 600 (1996), when the Court summarily granted a petition  ____________________ 1 The phrase "excusable neglect" appears in Fed. R. Civ. P. Rules 6(b), 13(f) and 60(b). The Supreme Court in Pioneer _______ referred explicitly to each one of these rules. Pioneer, 507 _______ U.S. at 391-93. The Court specifically observed that in Fed. R. Civ. P. 6(b), as in Bankruptcy Rule 9006(b) which it was construing, "there is no indication that anything other than the commonly accepted meaning of [excusable neglect] was intended." Id. at 391. Since Pioneer, courts have concluded the Pioneer ___ _______ _______ standard of "excusable neglect" should apply to Fed. R. Civ. P. 6(b). See, e.g., Committee for Idaho's High Desert, Inc. v. ___ ____ __________________________________________ Yost, 92 F.3d 814, 825 n.4 (9th Cir. 1996); 44 Liquormart, Inc. ____ ____________________ v. Rhode Island, 940 F. Supp. 437, 440 (D.R.I. 1996). ____________ 2 Fed. R. Crim. P. 45(b) permits courts to enlarge the time limits set for certain actions if failure to act within the specified time was the result of "excusable neglect." The Court in Pioneer also referred to the use of the phrase "excusable _______ neglect" in the Criminal Rules by noting that Rule 45(b), "like [Bankruptcy] Rule 9006(b), was modeled after [Fed. R. Civ. P.] Rule 6(b)." 507 U.S. at 392 n.9. 3 The Court in Pioneer referenced the phrase "excusable neglect" _______ in Fed. R. App. P. 4(a)(5). The Court placed this reference in a footnote explaining why it had granted certiorari on the issue of "excusable neglect." Id. at 387 n.3. In that explanation, the ___ Court included the fact that "[t]he Courts of Appeals similarly have divided in their interpretations on 'excusable neglect' as found in Rule 4(a)(5)." Id. We have since held that "Pioneer's ___ _________ exposition of excusable neglect . . . applies equally to Fed. R. App. P. 4(a)(5)." Virella-Nieves v. Briggs & Stratton Corp., 53 ______________ _______________________ F.3d 451, 454 n.3 (1st Cir. 1995).  -4- for certiorari, vacated the judgment below and remanded the case (GVR) for further consideration of the applicability of Pioneer _______ to a failure to file a criminal appeal within the 10-day period called for by Fed. R. App. P. 4(b). While not definitively determining the scope of Pioneer, the Supreme Court's use of the _______ GVR procedure in Stutson is an exercise of a reviewing court's _______ prudential powers to permit a lower court that had not directly confronted an intervening clarification in the law to have the first opportunity to adjust or correct its earlier decision. As the Court noted in a companion case discussing resort to the GVR procedure, Lawrence on behalf of Lawrence v. Chater, 116 S. Ct _______________________________ ______ 604 (1996): Where intervening developments, or recent developments that we have reason to believe the court below did not consider, reveal a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration, and where it appears that such a redetermination may determine the ultimate outcome of the litigation, a GVR order is, we believe, potentially appropriate. As did the Supreme Court in Stutson, we deal with the _______ need to evaluate the potential applicability of the balancing test announced in Pioneer to a different realm of federal _______ procedure. The importance of permitting the trial judge--who did not have Pioneer brought to his attention but is more familiar _______ with the dynamics of the settlement process that broke down here- -the opportunity of developing the record more fully is plain. -5- In the interests of justice, the trial judge should be afforded the full opportunity to calibrate the balance in the first instance, particularly if there is a reasonable probability that a different outcome would result. A review of the course of proceedings below suggests that there is such a probability. II II Exercising the hands-on case management in pursuit of settlement encouraged by the Civil Justice Reform Act of 1990,4  ____________________ 4 The Civil Justice Reform Act of 1990 ("the CJRA") is Title I of the Judicial Improvements Act of 1990, Pub. L. No. 101-650, 104 Stat. 5089. The CJRA, which is codified at 28 U.S.C. 471- 82, requires that each United States District Court implement a plan in order, inter alia, to "improve litigation management, and __________ ensure just, speedy, and inexpensive resolution of civil disputes." 28 U.S.C. 471. The CJRA lists guidelines for litigation management that federal courts may consider in formulating their plans. These include, in pertinent part:  (2) early and ongoing control of the pretrial process through involvement of a judicial officer . . .; (3) . . . careful and deliberate monitoring through a discovery-case management conference or a series of such conferences . . . . Id. 473(a).  ___ While the CJRA did not focus on judicial involvement in the settlement process, the Act reinforced the 1983 amendments to Fed. R. Civ. P. 16, which were designed to recognize the "informal use of pretrial conferences to promote settlement [through] increased judicial settlement efforts." Stephen McG. Bundy, The Policy in Favor of Settlement in an Adversary System, ________________________________________________________ 44 Hastings L.J. 1, 58 (1992). The CJRA "implie[d] that a local expense and delay reduction plan that authorizes judges to compel represented parties to participate in settlement conferences . . . is lawful. . . ." Id. at 60.  __ The CJRA plan for the District of Massachusetts accepted that implication and directed active encouragement of settlement efforts by the judicial officer. The plan provides that:   -6-  ____________________ At every conference conducted under these rules, the judicial officer shall inquire as to the utility of the parties conducting settlement negotiations, explore means of facilitating those negotiations, and offer whatever assistance that may be appropriate in the circumstances. Assistance may include a reference of the case to another judicial officer for settlement purposes. Whenever a settlement conference is held, a representative of each party who has settlement authority shall attend or be available by telephone.  Rule 4.02 Settlement, Expense and Delay Reduction Plan of the United States District Court for the District of Massachusetts (Adopted Nov. 18, 1991). The District Court's CJRA Plan is implemented by local rules mandating settlement discussions as part of case management procedures. See, e.g., L.R. 16.1(C) "Early Assessment of Cases" ___ ____ (requiring settlement proposals in advance of initial scheduling conference); L.R. 16.3(A)(1) "Case Management Conferences" (directing exploration of "possibility of settlement" at each case management conference); L.R. 16.4(B) "Alternative Dispute Resolution" (mandating inquiry by judicial officer concerning settlement at every conference conducted under Local Rules). We note that while current legislation and rulemaking initiatives have been encouraging active judicial involvement in pursuing settlements, a relatively recent examination of the judicial role in the process strikes a cautionary note. Once we recognize that all components of the intricate ecology of disputing are linked in complex and sometimes paradoxical ways to what courts do, it is manifest that the obligation of seeing justice is done is not discharged by uncritical celebration of settlement (or uncritical condemnation of it). It requires a discriminating appreciation of the complex dynamics of various species of settlements in different bargaining arenas and an appreciation of the limited capacity of the devices for regulating them. Settlement is not the answer; it -7- the trial judge in this motor vehicle accident diversity case, brought by a then 89-year-old plaintiff, set the matter down for a settlement conference on January 17, 1996. In order to ensure a full discussion of the possible ramifications of settlement, he directed not only that the parties and their attorneys but also the attorney for a non-party potential claimant and a representative of the defendant's insurance company be present. After separate discussions with the trial judge, the parties advised the court they were prepared to settle the case both as to the plaintiff and as to the non-party claimant within the policy limits. The judge then informed counsel that he would issue a 60-day Order of Dismissal permitting them the opportunity to tie up any loose ends regarding the settlement. He expressly instructed the parties that the 60-day Order of Dismissal "will be the end of the case as far as I'm concerned." He emphasized, however, that "if you have any problems . . . let me know and we can restore the case to the docket and pursue it." The following day, January 18, 1996, the 60-day Order issued from the court providing "this action is dismissed without costs and without prejudice to the right, upon good cause shown within sixty (60) days, to reopen the action if settlement is not  ____________________ is the question.  Marc Galanter & Mia Cahill, "Most Cases Settle": Judicial ________________________________ Promotion and Regulation of Settlements, 46 Stan. L. Rev. 1339, ________________________________________ 1391 (1994).  -8- consummated by the parties."5 That same day new information which impacted the terms of the settlement apparently came to the attention of plaintiff's attorney. The precise nature of this information is unclear to us but appears to involve recalcitrance by an interested entity not present at the settlement conference, the insurer of the non-party potential claimant. The trial court, however, was not informed of any difficulties regarding the settlement until April 8, 1996, some three weeks after the close of the 60-day period established before the dismissal would become final. In a letter to the court that day, plaintiff's counsel reported that "despite the good faith . . . and due diligence of counsel for both the plaintiff . . . and defendant . . . settlement has not been consummated." The letter requested the "earliest possible trial date." The trial court deemed the letter a motion to vacate the Settlement Order of Dismissal and denied it as untimely and lacking any showing of good cause. On April 18, plaintiff's counsel filed a formal Motion for Reconsideration of Plaintiff's Motion to Vacate the Court's  ____________________ 5 The 60-day order procedure has developed as a mechanism for the trial courts to bring cases to closure while retaining jurisdiction to enforce a settlement for a period of time after closure is announced. In Kokkonen v. Guardian Life Ins. Co. of ________ __________________________ Am., 511 U.S. 375, ---. 114 S. Ct. 1673, 1677 (1994), the Supreme ___ Court observed that a district court could only retain jurisdiction to enforce a settlement if the dismissal order expressly reserved such jurisdiction or if the court incorporated the settlement agreement into the dismissal order. See generally ___ _________ In re Mal de Mer Fisheries, Inc., 885 F. Supp. 635, 637-38 (D. __________________________________ Mass. 1995).  -9- January 18, 1996 Settlement Order of Dismissal.6 In the motion, plaintiff's counsel acknowledged that he learned of problems with the settlement the day after the settlement conference but instead of "resort[ing] to the Court to resolve the conflict, the parties worked diligently to achieve settlement." On May 15, the trial judge denied the motion in a five page memorandum, concluding: The plain fact of the matter is that if this court were to allow plaintiff's Motion for Reconsideration, the sixty-day Order of Dismissal would be a nullity. There would be no reasoned way that the court could ever deny an untimely motion ____ for reconsideration brought by any other party. No good cause has been offered for plaintiff's counsel's failure in this case to proceed in accordance with the Order's terms. Settlement discussions offer no excuse . . . . The unavoidable fact is that plaintiff's counsel, without any articulable excuse, simply ignored the contents of the January 18 Order . . . . On June 10, plaintiff's counsel filed a Motion for Relief pursuant to Fed. R. Civ. P. 60(b) on grounds of excusable neglect and inadvertency. On June 27, the trial judge denied the 60(b) motion.  ____________________ 6 The motion indicated that it was assented to by defendant s counsel. At oral argument, however, defendant s counsel stated that the assent was only to permit reconsideration and not to the ultimate relief of vacating the judgment sought by plaintiff. In any event, the defendant lodged no objection to the relief sought by plaintiff's attorney in his letter of April 8 or his motion of April 18. -10- At no point in proceedings before the trial court was the decision of the Supreme Court in Pioneer cited or its _______ implications argued. III III On the record before us, the issue is whether the failure of counsel to inform the court in a timely fashion that the settlement had unravelled was "excusable neglect," within the meaning of Fed. R. Civ. P. 60(b)(1). That it was neglect is manifest; counsel neglected to pay heed to a direction to provide timely notice to the court that the settlement would not be consummated within the 60-day period. The open question is whether the neglect was excusable. The determination whether the neglect was excusable should be left in the first instance to the trial court, which was never afforded the opportunity to evaluate the question in light of Pioneer. This is especially appropriate here where _______ there apparently was off-the-record consultation involving the trial judge regarding the terms of the settlement, and the formal record regarding its breakdown is relatively undeveloped, no doubt because the areas for development that Pioneer identifies, _______ 504 U.S. at 394, were not explored.  From our vantage point it is difficult to see what cognizable prejudice, in the sense, for example, of lost evidence, would come to the defendant from reopening the case. Of course, it is always prejudicial for a party to have a case -11- reopened after it has been closed advantageously by an opponent's default. But we do not think that is the sense in which the term "prejudice" is used in Pioneer. Moreover, the delay was not _______ particularly extended. Impact on judicial proceedings is arguably of concern; but if the parties had reported on the 59th day that the settlement could not be consummated, it would not appear to have a materially less significant impact than it does here when the report occurred some 21 days later.7 Finally, there does not appear to have been a lack of good faith with respect to the reason for the delay; from all the record discloses the cause of the difficulties was beyond plaintiff's control. It seems that a stranger to the litigation with an  ____________________ 7 In circumstances such as these, Fed. R. Civ. P. 60(b) provides a fail-safe mechanism to guard against the finality of improvident judgments. The relatively expansive one-year time period under Fed. R. Civ. P. 60(b)(1) for challenges to judgments flowing from excusable neglect is designed to permit considered review and assertion of such grounds. This mechanism is designedly at the expense of the rigid enforcement of more compressed time periods imposed for acts required to be taken before judgment enters. Defendant correctly observes that it was not until June 10, nearly three months after the dismissal took effect, that plaintiff expressly framed the issue under Fed. R. Civ. P. 60(b). Defendant notes that in Pag n v. American Airlines, 534 F.2d 990 _____ _________________ (1st Cir. 1976), we upheld denial of a 60(b)(1) motion not filed until four months after the conclusion of a 60-day settlement order period and argues we should act in the same fashion here. It is a sufficient answer to observe that Pag n substantially _____ predates Pioneer. Moreover, here there were relatively more _______ timely efforts, albeit not framed expressly under Rule 60(b), to set aside the judgment. Even in Pag n, there were indications _____ the trial court would have considered reinstating the case if a request had been made within two months after the dismissal took effect. Id. at 993.  ___ -12- interest in a potential claim was making threatening noises. The parties apparently hoped to work to resolve the impediments without the court's intervention. There was no gamesmanship by plaintiff here. Rather we have an instance of inattentive hopefulness blinding plaintiff's counsel to the need to assure that a time deadline was met. We do not deny the importance of timeliness requirements in the fair and efficient management of a trial court's busy docket. Especially in an era when great emphasis is placed on vigilant judicial oversight of the various alternatives to the resolution process, failure of the parties to adhere to deadlines is a practice that can be disruptive of the rights of other litigants in other cases who also are entitled to active judicial attention. But the Supreme Court has recently adopted a forgiving attitude toward instances of "excusable neglect," a term Pioneer suggests will be given a broad reading. _______ Whether the failure of plaintiff's attorney to notify the district court in a timely fashion regarding the breakdown of the settlement in this case comes within the meaning of "excusable neglect" as explicated in Pioneer, is a matter to be _______ resolved initially by the trial court on the basis of a more extended record. IV IV Accordingly, we hereby vacate the denial of the vacate ______ plaintiff's Rule 60(b) motion and remand this case to the trial remand ______ -13- court for further proceedings consistent with this opinion. -14-