**Mary V. PRATT**

v.

**Kelley C. PHILBROOK.**

**No. Civ.A. 97–30183–MAP.**

United States District Court, D. Massachusetts.

Feb. 25, 1999.

64

Edward W. McIntyre, Clinton, MA, for Mary V. Pratt, plaintiff.

Paul G. Pino, Clark, Balboni & Gildea, Brockton, MA, for Kelley C. Philbrook, defendant.

Paul G. Pino, Clark, Balboni & Gildea, Brockton, MA, for Kelley C. Philbrook, counter-claimant.

Edward W. McIntyre, Clinton, MA, for Mary V. Pratt, counter-defendant.

## *MEMORANDUM REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

PONSOR, District Judge.

### I. INTRODUCTION

On January 18, 1996, in a previous incarnation of this lawsuit, *Pratt v. Philbrook,* C.A. 95–30143 (*Pratt I* ), this court issued an order of dismissal, following a hearing

at which counsel announced that the case was settled. The Order indicated that the case was dismissed "without prejudice to the right, upon good cause shown within sixty (60) days, to reopen the action if settlement is not consummated by the parties."

The court thereafter heard nothing until April 9, 1996, more than sixty days later, when plaintiff's counsel wrote the court attempting to reopen the case. Deeming counsel's letter a motion to vacate the order of dismissal, the court denied it, and subsequently denied plaintiff's motion for reconsideration as well.

Plaintiff took an appeal of this ruling, and the First Circuit Court of Appeals subsequently remanded the case for reconsideration of possible "excusable neglect" in light of *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). *See Pratt v. Philbrook,* 109 F.3d 18 (1st Cir.1997).

Upon reconsideration, this court made findings on the issue of excusable neglect and declined to alter the original ruling. *See Pratt v. Philbrook,* 174 F.R.D. 230 (D.Mass.1997). On February 11, 1998 this ruling was affirmed by the Court of Appeals in an unpublished decision. *Pratt v. Philbrook,* No. 97–1932, 1998 WL 60402 (1st Cir. February 11, 1998).

In the current lawsuit, involving the same parties, plaintiff's counsel has attempted to strike a path around the court's order of dismissal. He now claims that on January 17, 1996 a settlement in the original case was in fact agreed to by the defendant, through his attorney and insurance adjuster, but thereafter wrongfully repudiated. Plaintiff's legal theories, pressed in his six-count complaint, include breach of contract, deceit, negligent misrepresentation, promissory estoppel, unjust enrichment and *quantum meruit.*

Defendant has moved for summary judgment. For the reasons set forth below, the motion will be allowed.

## II.  PROCEDURAL AND FACTUAL BACKGROUND

The court may allow a motion for summary judgment if the moving party demonstrates that there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court is required to deny the motion if a reasonable jury could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The facts in this case are assessed in light of this standard.

The procedural and factual background of this case is set forth in detail in this court's most recent opinion. *Pratt,* 174 F.R.D. 230. In summary, it is undisputed that on February 23, 1995, the defendant, Kelley Philbrook ["Phil-brook"], while driving his pick-up truck, struck a motor vehicle operated by Rita Dreyer ["Dreyer"], in which her sister, the plaintiff, Mary V. Pratt ["Pratt"], was a passenger. *Id.* at 231. The accident caused serious injury to the plaintiff, to Dreyer and to Dreyer's vehicle. *Id.* Philbrook's insurer was General Accident, and his policy carried a single-limit of $100,000. *Id.* at 232.

A settlement conference before this court took place on January 17, 1996, with attorneys for plaintiff, defendant and Dreyer in attendance, as well as Charles Creamer ["Creamer"], an adjuster for General Accident. *Id.* Although Dreyer was not a party to the lawsuit, her counsel was ordered to appear because Dreyer also had a claim against General Accident's policy for her injuries. *Id.* Besides the claims of Dreyer and Pratt, "[a]ll counsel knew" that Plymouth Rock, Dreyer's insurance company, had a subrogated claim against General Accident for damage to Dreyer's car. *Id.* However, Plymouth Rock's claim was not explicitly mentioned during the conference.

Plymouth Rock had paid for damage to Dreyer's car and had a lien in the amount of roughly $5,000 against General Accident's $100,000 policy, to recover its payment to Dreyer. *Id.* at 231–32. It is important to note that Pratt's counsel had been the one to settle Dreyer's claim against Plymouth Rock and was aware, independently, that Plymouth Rock had a claim for property damage against General Accident's policy. *Id.* at 231.

The result of the January 17 conference was that General Accident agreed to pay the full $100,000 policy limit. *Id.* at 232. Counsel for Pratt and Dreyer assured the court that there would be no problem negotiating the division of the $100,000 between their clients. Thereupon, the court stated:

> My intent is to issue what we call a sixty-day order of dismissal, which means that the case falls off—is disposed of for purposes of my record but remains in limbo for sixty days and can be hauled back to life again if there are any problems wrapping up the case.
>
> So you'll be getting a sixty-day order of dismissal in the mail in the next couple of days and that will be the end of the case as far as I'm concerned; but if you have any problems I'll hear from you, let me know and we can restore the case to the docket and pursue it.

*Id.* at 233 (quoting Transcript of January 17, 1996 settlement conference at 15).

The next day, January 18, 1996, the court's deputy clerk issued a Settlement Order of Dismissal, which ordered that the action be dismissed "without prejudice to the right, upon good cause shown within sixty (60) days, to reopen the action *if settlement is not consummated by the parties.*" *Id.* (quoting Docket No. 14; emphasis supplied). Thus, the language of the order clearly recognized that there might be details still to be worked out between the parties.

The inability thereafter to agree on the final terms of the settlement plagued *Pratt I,* and is still at issue in this new case. *See Pratt,* 109 F.3d 18 (1st Cir.1997), and this court's earlier decision at 926 F.Supp. 23 (D.Mass.1996).

On January 18, 1996, Creamer reminded Pratt's attorney, Edward W. McIntyre ["McIntyre"], of Plymouth Rock's subrogated claim against General Accident's policy, and McIntyre told Creamer "that he [McIntyre] would contact Plymouth Rock and Dreyer's attorney ... to work something out." *Pratt,* 174 F.R.D. at 233. After two months, although Pratt and Dreyer had agreed to an 85%–15% split of their share of the money, McIntyre still did not have a firm understanding regarding the Plymouth Rock claim. Id. at 234. Thus, a sticking point of approximately $5,000 in a $100,000 settlement remained.

The sixty-day deadline for the dismissal order passed on March 18, 1996, with no word to the court from McIntyre, even though he had not finalized the settlement by that date. *Id.* On April 9, 1996, three weeks after the deadline passed, McIntyre wrote a letter to the court in which he asked for a trial date because *"settlement had not been consummated."* *Id.* (emphasis supplied). His request did not include the requisite communication of "good cause or explanation...." *Id.*

As noted, the court treated his request as a motion to vacate the dismissal, denied it, and later denied the plaintiff's motion for reconsideration.

The plaintiff appealed to the First Circuit, which remanded the case for consideration of whether the plaintiff "has satisfied the latitudinarian standards for excusable neglect the Supreme Court has outlined." *Pratt,* 109 F.3d at 18–19 (discussing the standard articulated in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)).

This court reconsidered the case in light of *Pioneer* and denied the motion a second time, finding that there was no excusable neglect when four of the five factors used

in *Pioneer* weighed against Pratt. *Pratt*, 174 F.R.D. at 236. The plaintiff again filed an appeal, but the First Circuit affirmed the decision, declaring that "[t]he court's factual findings are well supported and its mixed law/fact determinations are unassailable." *Pratt*, No. 97–1932, 1998 WL 60402, (1st Cir. Feb.11, 1998). The plaintiff then filed this case.

Central to the complaint in this case is the plaintiff's charge that Creamer was Philbrook's agent and thus Philbrook is personally responsible for what Creamer allegedly did. *Compl.* at ¶ 17. According to Count I of the complaint, Creamer offered to pay Pratt and Dryer the full policy limit of $100,000 in satisfaction of their bodily injury claims against Philbrook. *Compl.* at ¶ 14. The plaintiff claims, in essence, that she accepted this offer, but that General Accident refused to pay the $100,000 thereby breaching a contract, for which breach Philbrook is now responsible. *Id.* at ¶ 19.

In Counts II and III, the plaintiff alleges that, because Creamer did not explicitly raise Plymouth Rock's subrogated claim at the settlement conference, there was deceit and negligent misrepresentation, for which Philbrook is responsible. *Id.* at ¶ 22–32. The plaintiff also claims, in Count IV, that she relied to her detriment on the promise of her share of the $100,000 when she agreed not to pursue a cause of action against Philbrook. Id. at ¶ 33–34. As a result, the contention goes, Philbrook is now responsible to her under the theory of promissory estoppel. *Id.* In Counts V and VI, the plaintiff claims that her agreement not to pursue a claim against Philbrook has resulted in his unjust enrichment, and that she is entitled to compensation under a theory of *quantum meruit.* *Id.* at ¶ 35–38.

In his motion for summary judgment, the defendant argues that, given the undisputed facts, no reasonable jury could find an agency relationship between Creamer and Philbrook. The defendant further argues that, even if there was an agency

relationship, there was no detrimental reliance or unjust enrichment because the complaint was dismissed solely because Pratt's attorney failed to comply with the order to notify the court if the case was not wrapped up within sixty days. The defendant also argues that this case is barred by *res judicata.* He maintains that the underlying issues in this complaint were decided in *Pratt I,* when the court held (1) that General Accident agreed to pay $100,000 to settle all claims, (2) that everyone (including plaintiff's counsel) knew of Plymouth Rock's subrogated claim, (3) that reasonably diligent efforts by McIntyre would probably have salvaged the settlement and (4) McIntyre's negligence in failing to notify the court of the hitch within sixty days was the sole proximate cause of plaintiff's injury.

## III. DISCUSSION

As will be seen below, although the arguments offered by defendant—lack of agency and *res judicata* —have considerable merit, judgment for defendant is required for three reasons even more compelling: first, on the undisputed facts, no meeting of the minds occurred at the January 17, 1996 conference as a matter of law; second, no action or inaction of the defendant, whether pled in contract or tort, proximately caused any injury to the plaintiff as a matter of law; and, third, permitting this case to proceed to trial would undermine the power of this court to enforce its orders and to sanction parties who ignore them. The discussion below will address first the arguments offered by the defendant, then turn to examine the three points noted above in more detail.

█ First, while Massachusetts case law is not perfectly clear, defendant appears to have the stronger argument on the agency issue. The question is straightforward: as a matter of law, were the insurance adjuster, Creamer, and defendant's counsel (retained and paid by the

insurance company), Paul G. Pino, agents of Kelley Philbrook, the defendant and alleged tortfeasor, to the extent that alleged improprieties committed by *them* during the process of settling Pratt's claim could expose *Philbrook* to personal liability? It is important to underline that plaintiff seeks damages in the case now before the court, not for Philbrook's negligence in operating his pickup on February 23, 1995, but for alleged improprieties by the insurance adjuster and attorney during the process of settling the Pratt claim, now attributed by Pratt to Philbrook.[1]

The possibility that they might be personally liable for misbehavior by their insurer's employees would be both startling and unwelcome news to most insureds. No Massachusetts case goes anywhere close to suggesting that this is the law. True, some cases will permit a plaintiff to avoid the statute of limitations, where affirmative misrepresentations by an insurance adjuster led an injured party to believe that a claim would be honored regardless of the limitations period. In that sense, a defendant in some circumstances will remain on the hook for a tort claim that might otherwise have been dismissed, as a result of his insurance company's misconduct. *Bergeron v. Mansour*, 152 F.2d 27 (1st Cir.1945); *Mackeen v. Kasinskas*, 333 Mass. 695, 132 N.E.2d 732 (1956); *Hayes v. Gessner*, 315 Mass. 366, 52 N.E.2d 968 (1944).

But these holdings are a far cry from plaintiff's contention here, that Philbrook inhabits the role of principal in relation to the insurance company's adjuster and his attorney, to the extent that he will be held liable for damages based on their alleged misbehavior during the settlement process. Counsel has cited no case that takes agency theory this far.

Second, defendant also appears to occupy the stronger position with regard to the preclusive effect of this court's factual findings in the previous litigation. On remand, at the direction of the Court of Appeals, this court received submissions and made factual findings regarding the performance of the parties involved in the episode that underlies this case, including the attorneys and the adjuster. In summary, these findings were that Creamer and Pino acted reasonably under the circumstances and that McIntyre, plaintiff's counsel, was negligent. Moreover, the court found, on the issue explicitly mandated by the First Circuit, that this negligence was not "excusable."

Plaintiff is correct that the prior decision has no *res judicata* effect on this case in the form of *claim* preclusion. The current complaint offers different theories unavailable at the time the original suit was filed, as to which there has been no decision on the merits.

■■■ However, *res judicata* has another face, called *issue* preclusion, sometimes known as collateral estoppel. This doctrine "bars relitigation of any factual or legal issue that was actually decided in previous litigation 'between the parties, whether on the same or a different claim.'". *Grella v. Salem Five Cent Savings Bank*, 42 F.3d 26, 30 (1st Cir.1994) (citations omitted). So long as the parties are the same, as they are here, issue preclusion will apply when four essential elements are established: 1) the issue must be the same as that involved in the prior action; 2) the issue must have been actually litigated; 3) final judgment must have been rendered on the issue; and 4) the determination of the issue "must have been essential to the judgment." *Id.* Moreover, an issue may be conclusively resolved for purposes of issue preclusion "even if it is not explicitly decided, for it may have constituted, logically or practically, a necessary component of the decision reached in the prior litigation." *Id.* at 31 (citation omitted).

---

1. Pratt, through separate counsel, already has an independent lawsuit pending against the insurance company and its adjuster directly for unfair practices arising from precisely the same circumstances as this case. *See Pratt v. General Accident Insurance Company and Charles Creamer*, C.A. No. 96–30123–MAP.

As noted, obedience to the First Circuit's remand order required this court to make explicit findings on several factors enunciated by Justice White in *Pioneer*, including prejudice to the defendant, length of delay and impact on judicial proceedings, the reason for the delay and whether it was within the plaintiff's control and, perhaps most importantly, plaintiff's good faith. On all these points the court made findings against plaintiff, or more particularly against her attorney. Given this finding of bad faith, and its preclusive effect on this litigation, it is very difficult to see how plaintiff can fairly take the position that she suffered injury as a result of wrongdoing by the adjuster and defense counsel.

These comments about preclusion segue into an even more essential point: the record of this case and the findings made by this court in *Pratt I* establish as a matter of law that no enforceable settlement was reached at the January 17, 1996 conference. There was simply no meeting of the minds, as became clear the very day following the court conference.

Defendant assumed that it had offered its $100,000 policy limit to settle *all* claims, including both the claims of the two injured parties and the relatively minor property damage claim. As the court found in *Pratt I*, this assumption was entirely reasonable since (1) plaintiff's counsel was fully aware of this claim and (2) it would have been improper for General Accident to abandon its insured, a carpenter of limited means, with a claim against him still hanging for something in excess of $5,000.

In contrast, plaintiff's counsel has, since January 17, 1996, taken the position that he assumed, for reasons never explained, that the $100,000 offer was placed on the table to be divided solely by the two injured parties, as though the property damage claim did not exist.

Putting aside the good faith of this assumption, the parties, mutual mistake—if it may generously be characterized as such—was brought to plaintiff's attention the very next day. From that time, it was clear that no deal existed, only the chance that an agreement might be salvaged by prompt action on the part of plaintiff's counsel, which was never taken. Thus, there was simply no agreement to enforce. Certainly there was no deceit, no negligence in making any representations and no enforceable promise on the part of the defendant. In sum, in the absence of any binding agreement or misrepresentation, the foundation of all the counts in plaintiff's complaint collapses.

Moreover, even if there had been some actionable misconduct on the part of the defendant in connection with the January 17 conference, this behavior did not proximately cause plaintiff's injury. From this perspective it does not matter who bore the blame for the failure to consummate a settlement. Plaintiff's counsel had his remedy to hand. All that was required was for counsel to notify the court within sixty days of the failure of the case to settle, for whatever reason, and the lawsuit would have been restored to the court's docket, with the prospect of a prompt trial date. If she proved liability, plaintiff would have been entitled to a full award of damages, including monetary compensation possibly in excess of what the insurer offered, if a jury so found. Plaintiff's injury was caused by her attorney's neglect, not by any act committed by the defendants.

Finally, this lawsuit is an obvious effort on the part of counsel to avoid the consequences of the court's order of dismissal, affirmed by the Court of Appeals. Aggressive advocacy is no sin, but the court has an obligation to protect the integrity of its own process. To permit this case to go forward would be to render the sixty-day order of dismissal virtually meaningless. Any plaintiff could come to this court and announce with defendant that the case was settled, disregard the sixty-day order, and then, at any point during the applicable limitations period, file a complaint purporting to enforce the alleged settlement agreement. Special circumstances may

**70**

arise in which, as a matter of equity, the court might be persuaded to permit a litigant to enforce a settlement agreement, despite failure to comply with the sixty-day order, but no such circumstance obtains here.

Generally speaking, disputes between two parties arising out of the same incident are to be resolved in one proceeding, by trial or otherwise. If the case is settled, counsel may inform the court. But if the settlement thereafter falls apart, counsel have an obligation (absent special circumstances) to comply with the order of the court that permits resumption of the *original* case, not simply ignore the order and file a new lawsuit, or new lawsuits, as plaintiff has attempted to do here.

### IV. CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment will be ALLOWED. The clerk will be ordered to set the case down for a status conference regarding further proceedings on defendant's counterclaim for abuse of process, the only portion of this case remaining.