QUEENS SYNDICATE COMPANY,
et al., Plaintiffs

v.

Sally HERMAN, as Temporary Executrix for the Estate of Stephen Cooperman, Defendant.

No. 08–CV–30095–MAP.

United States District Court,
D. Massachusetts.

March 9, 2010.

Mark H. Bluver, Weiner & Lange, P.C., Springfield, MA, for Plaintiffs.

Andrew M. Hochberg, Andrew M. Hochberg, PC, Pittsfield, MA, for Defendant.

Judd L. Peskin, Peskin, Courchesne & Allen, P.C., Springfield, MA, for Intervenor Plaintiff.

Paul H. Rothschild, Bacon & Wilson, P.C., Springfield, MA, for Interested Party.

*MEMORANDUM AND ORDER REGARDING LISA MINOR'S MOTION TO VACATE ORDER ON MOTION FOR SETTLEMENT AND PLAINTIFFS' MOTION FOR ORDER TO ADOPT PROPOSED ORDER* (Dkt. Nos. 30 and 35)

PONSOR, District Judge.

## I.  *INTRODUCTION*

Lisa Minor, one of several general partners in the Plaintiff real estate partnerships that originally brought this lawsuit, has filed an untimely motion to vacate an order from this court enforcing a settlement. (Dkt. No. 30). Plaintiff real estate partnerships and Defendant have opposed Minor's motion to vacate, and Plaintiffs have filed a separate motion (Dkt. No. 35), asking the court to adopt a proposed order effectuating the earlier enforcement ruling. For the reasons set forth below, the court will deny Minor's motion to vacate and allow, in part, Plaintiffs' motion for an order enforcing the settlement.

## II.  *FACTUAL AND PROCEDURAL BACKGROUND*

At the heart of this litigation are six family-run real estate partnerships. Two of them, Queens Syndicate Company ("Queens") and Combo Stores Company ("Combo"), are plaintiffs in this action. Four others, Initial Realty Company ("Initial"), Sons Realty Company ("Sons"), P & S Realty Company ("P & S"), and Flatlands Management Company ("Flatlands"), are plaintiffs in a separate action also before this court, *Initial Realty Co. v. Herman,* 08–cv30235–MAP. Each of these six entities is a general partnership organized under New York law, with a principal place of business in New York. The partnerships own and manage property in Queens, Kings, and Nassau counties in New York. Stephen Cooperman formally took over management of all the partnerships from his mother in 2000, handling the work out of his home in Great Barrington, Massachusetts.

Between 2000 and 2004 the partnerships paid Lisa Minor, Cooperman's sister, to assist Cooperman and to receive training from him in the management of the partnerships. Minor, as noted, was a general partner in all six partnerships and a resident of Washington state. The notion apparently was that Minor would take over Cooperman's responsibilities as managing partner for the partnerships in the event he became unable to perform them. Management of the partnerships had been kept within the Cooperman family for many decades.

In 2007, the general partners became concerned about Cooperman's monetary distributions from the partnerships. On January 16, 2008 the general partners of the six partnerships, including Lisa Minor, met and formed management committees

to address these concerns. Lisa Minor was a member of the management committee for four of the partnerships: Initial, Sons, P & S, and Flatlands, Plaintiffs in 08–cv–30235. (*See* Dkt. No. 4 in 08–cv–30235 at 18 ¶ 15.) A month later, Cooperman died. Subsequently, a review of the partnerships' records revealed evidence that Cooperman, among other things, had been paying substantial personal expenses with partnership funds. A blizzard of litigation followed.

In addition to lawsuits in Massachusetts and New York state courts, two cases were filed in this court: *Queens Syndicate Company, et al. v. Herman,* 08–cv–30095, and *Initial Realty, et al. v. Herman,* 08–cv–30235, with two of the partnerships (Queens and Combo) as Plaintiffs in the first case and the remaining four in the second. The two cases, filed in May and December of 2008 respectively, named Shelley Herman, Executrix of the Cooperman estate, as Defendant. Each sought legal and equitable relief for mismanagement and breach of fiduciary duty by Cooperman in his conduct of the partnerships during his lifetime. Initiation of both lawsuits was explicitly authorized by the unanimous agreement of all general partners of each of the partnerships, including Lisa Minor. (*See* Dkt. No. 33, Ex. A, Minutes of Queens Syndicate Co. Partnership at 3.) Plaintiffs promptly moved to consolidate the two cases, with Defendant Herman opposing.

Before the court had heard argument on this motion, the parties entered settlement negotiations in New York with the goal of resolving all, or as much as possible, of the storm of litigation in state and federal court arising from Cooperman's alleged misconduct. Minor was represented in those negotiations by attorney Paul H. Rothschild. On February 27, 2009, the parties executed a Mediation Settlement Agreement ("Agreement"), which typically required, among other things, that all parties sign mutual releases of liability. Lisa Minor personally signed the Agreement multiple times. (*See* Dkt. No. 29, Ex. A, Mediation Settlement Agreement at 4.) In the Agreement she explicitly agreed to its terms, which included her promise to sign the release. *See Id.* ¶ 10.

Upon notification of the settlement and at the request of the parties, on March 23, 2009, this court issued the Sixty–Day Settlement Order of Dismissal. The order stated that both the pending cases were dismissed "without prejudice to the right of any party, upon good cause shown, to reopen the action within sixty (60) days if settlement is not consummated." (*See,* Dkt. No. 28 in 08–cv–30095 and Dkt. No. 9 in 08–cv–30235.)

Thereafter, Minor's New York attorney, who for reasons that are not clear had declined to attend the negotiations leading up to the Agreement (though, as noted, Attorney Rothschild of Massachusetts had attended as her counsel), reviewed the proposed terms and expressed concerns, leading Minor to refuse, despite her promise in the Agreement, to sign the contemplated release. Minor's refusal threatened to capsize entirely the laborious efforts to resolve the litigation.

On May 26, 2009, two days beyond the sixty-day deadline, Attorney Mark Bluver, counsel for Plaintiffs in the Queens Syndicate case, 08–cv–30095, spoke to a clerk of this court by telephone indicating that he was requesting a 30–day extension of the 60–day dismissal period. No written motion requesting the extension was filed at that time, and no ruling appears on the docket explicitly extending the dismissal period.

Two days later, on May 28, 2009, Attorney Bluver filed a Motion to Enforce Set-

tlement Agreement (Dkt. No. 29). The motion explicitly sought enforcement of Minor's obligation to execute the release.[1] *Id.* at 2 ("The Partnerships ... hereby ask the Court to order Lisa Minor ... to execute a Mutual Release as provided in the Mediation Settlement Agreement."). The certificate of service confirmed that the motion was served on Attorney Rothschild, Minor's lawyer. The motion was never opposed as required by Rule 7.1(B)(2) of the Local Rules for the District of Massachusetts, and on June 12, 2009, this court allowed it.

Nearly two months later, on August 7, 2009, Minor filed a motion, through Attorney Rothschild, to vacate the Enforcement Order. (*See* Dkt. No. 30.) This motion was promptly opposed, and the court heard argument regarding it on November 10, 2009. Following argument, on November 16, 2009, Plaintiffs in both lawsuits filed a motion styled a Motion to Adopt the Proposed Order. (*See* Dkt. No. 35 in 08–cv–30095 and Dkt. No. 10 in 08–cv–30235.) In this motion Plaintiffs ask this court to issue an order in the form attached to the motion, requiring Minor, among other things, to sign the release contemplated by the Agreement or be deemed to have done so for purposes of the settlement the Agreement embodies.

After allowing a period of time, at counsel's request, for further attempts to resolve the motions, the court took them under advisement. As noted in the introduction, the court will deny Minor's motion and allow Plaintiffs' motion, in part.

## III. *DISCUSSION*

### A. *Motion to Vacate*

Minor argues that the court's order of June 12, 2009 allowing Plaintiffs' motion to enforce the settlement is void as applied to her for two reasons: (1) the court lacks personal jurisdiction over her because she is not a party to the case, and (2) the court lacked subject matter jurisdiction over the action, since the motion to enforce the settlement agreement was filed on May 28, 2009, slightly outside the sixty-day dismissal period.

#### 1. *Personal Jurisdiction*

■ Minor's argument that she is not a party to this case and therefore cannot be bound by any order of this court is unpersuasive. As a general partner in all six plaintiff partnerships in the two lawsuits before this court, Minor was party to this litigation as a matter of law.[2]

States take different approaches to the question whether personal jurisdiction over a partnership automatically confers jurisdiction over its general partners. The First Circuit has not directly ruled on the issue, but it has suggested that the issue "may turn on the law where the partnership was formed." *See Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co., et al.,* 295 F.3d 59, 67 (1st Cir.2002) (citing, *inter alia, Miller v. McMann,* 89 F.Supp.2d 564, 569 (D.N.J.2000)).

■ The six Plaintiff partnerships were all formed under New York law. New York law therefore presents the best au-

---

1. No parallel motion appears on the docket in 08–cv–30235, possibly because general enforcement of the Agreement, including execution by Minor of the release, would in any event protect the interests of the four plaintiff real estate partnerships named in that complaint.

2. Ironically, if Minor's argument were correct, and she were not a party, then, given that she has not moved to intervene, her presence in the case at all would be anomalous. She would lack standing to appear and argue.

thority to determine the question whether personal jurisdiction over partners follows from jurisdiction over the partnerships. New York partnership law is very clear that "where a court has personal jurisdiction over a general partnership, it also has personal jurisdiction over the general partners." *U.S. Bank Nat'l Ass'n v. Ables & Hall Builders,* 582 F.Supp.2d 605, 616 (S.D.N.Y.2008). Minor is indisputably a general partner in the six New York partnerships who are plaintiffs in the case. Under New York law, the court acquired personal jurisdiction over her once the first complaint was filed.[3]

It is worth noting that the proper exercise of personal jurisdiction over Minor by this court works no practical unfairness upon her. She participated knowingly and intelligently in the mediation sessions that led to the settlement of the cases filed here, and she was represented by counsel throughout that process. Her attorney was served with the Motion to Enforce Settlement Agreement, and she had a full and fair opportunity to file her opposition to the motion within the fourteen days contemplated by Local Rule 7.1(B)(2), bringing to the court's attention whatever concerns she had either with the Agreement as a whole or with the mutual release. Instead, she slept on her rights.

In short, the court has had, and continues to have, personal jurisdiction over Minor in her role as a party to this litigation. She had an obligation to make her opposition to motions filed in this case known in a timely manner. It is simply too late for her to raise her objections now.

### 2. Subject–Matter Jurisdiction

██ Minor also argues that the court lacked subject-matter jurisdiction over the case itself at the time it entered the enforcement order. Therefore, the argument runs, even if the court had jurisdiction over her personally, and even if she failed to file timely opposition to the motion to enforce the settlement, the court's enforcement order (lacking any jurisdictional foundation) is without effect.

Minor is correct, of course, that if a court determines at any time that it lacks subject-matter jurisdiction, it must dismiss the action or vacate the judgment. Fed. R.Civ.P. 12(h)(3); *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 76–77, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996) ("[I]f, at the end of the day and case, a [subject-matter] jurisdictional defect remains uncured, the judgment must be vacated.")

Minor bases her subject-matter jurisdiction argument on *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), and *Lipman v. Dye,* 294 F.3d 17 (1st Cir.2002).

In *Kokkonen* the plaintiff, an insurance agent, brought a state law action against an insurance company in state court. The defendant removed the case to federal court based on diversity, and eventually it went to trial. Following closing arguments, the parties reached an oral agreement to settle the case and shortly thereafter filed a Stipulation and Order of

---

**3.** Minor's argument that exercise of personal jurisdiction over her would violate her constitutional right to due process is similarly unconvincing. Putting aside her status as a general partner, it is undisputed that Minor traveled regularly to Massachusetts to assist her brother in managing the real estate partnerships and that she participated vigorously in this case and in related litigation before the Superior Court in Berkshire County. Her contacts with this jurisdiction easily satisfy minimum constitutional requirements. *See generally Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 144 (1st Cir.1995) (holding constitutional requirements satisfied where there is relatedness, purposeful availment or minimum contacts, and reasonableness).

Dismissal With Prejudice, which the district court judge signed under the notation: "It is so ordered." In contrast to the situation currently before this court, the ruling of the lower court in *Kokkonen* made no mention of any ongoing retention of jurisdiction for any period. Five weeks later, the defendant insurance company filed a motion to enforce the settlement agreement. The plaintiff filed a timely opposition on the ground that the court lacked subject-matter jurisdiction. The trial court granted the enforcement motion, citing "its inherent supervisory power." *Id.*, at 377, 114 S.Ct. 1673. After affirmance by the Court of Appeals, the Supreme Court unanimously reversed, finding that the district court lacked inherent authority to enforce the settlement, unless the terms of the dismissal incorporated a provision contemplating in some fashion a retention by the court of jurisdiction over the settlement. *Id.*, at 381, 114 S.Ct. 1673. Absent this, or some other independent ground for jurisdiction, enforcement of the settlement agreement was a matter for state courts. *Id.*, at 382, 114 S.Ct. 1673.

In *Lipman*, the district court, believing the case to be settled, issued a Settlement Order of Dismissal similar to the one issued in this case, allowing the dismissal to be reconsidered and the case to be reopened within sixty days for good cause. Within the sixty days, Plaintiff filed a Motion to Reopen Case or to Enforce Settlement Agreement, identifying a dispute over $10,000 the parties had been unable to resolve. Finding no good cause to reopen the case, the district court denied the motion, and the plaintiff did not appeal. Seven months later, the plaintiff filed a second Motion to Enforce and Implement the Terms of the Settlement Agreement, requesting the district court "to direct in specificity how to implement the terms of the Settlement. . . ." *Lipman*, 294 F.3d at

19. The district court denied this second motion as well, and the plaintiff appealed this second ruling. The First Circuit affirmed the district court's action, citing *Kokkonen*, and holding that, by the time the second motion was filed "the case in question had, for some time, been terminated" and "[t]he district court itself lacked jurisdiction to resurrect it." *Id.*, at 21.

As Minor points out, Plaintiffs did not move to enforce the settlement Agreement until a few days after the sixty-day period had expired. Thus, she argues, this court's subject-matter jurisdiction had lapsed, the case had closed, and the court lacked power to enforce the Agreement.

Minor's argument describes the holdings in *Kokkonen* and *Lipman* accurately, but it overlooks the well-established authority in the First Circuit permitting district courts to extend the sixty-day period of dismissal, even when a motion is filed outside the sixty days, upon a finding of excusable neglect under Fed.R.Civ.P. 60(b).

In *Pratt v. Philbrook*, 109 F.3d 18 (1st Cir.1997), the Court of Appeals addressed a situation where the plaintiff's attorney had filed a motion to reopen an automobile tort case *three weeks* after the sixty-day period had run. Citing *Kokkonen*, the court noted that the "60–day order procedure has developed as a mechanism for the trial courts to bring cases to closure *while retaining jurisdiction to enforce a settlement for a period of time after closure is announced.*" *Id.*, at 21 n. 5 (emphasis supplied). The court then examined circumstances under which the sixty-day period might be extended, even without the filing of a motion before the deadline, applying the Rule 60(b) standards for "excusable neglect" articulated by the Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S.

380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Judge Woodlock, sitting by designation, found that, even where the plaintiff filed his motion three weeks beyond the deadline, the *Pioneer* "excusable neglect" escape hatch might be available. If it were, jurisdiction could be properly retained and exercised by the trial court.

Here, the standards set forth in *Pioneer* and underlined in *Pratt* are well satisfied. In particular, the three factors that Justice White found most pivotal in *Pioneer* break strongly in favor of Plaintiffs in this case. *See Pioneer,* 507 U.S. at 395, 113 S.Ct. 1489. There is absolutely no prejudice to Minor in extending the dismissal period, since she was represented by counsel at all relevant times, and there can no be no claim of lost evidence or any of the other problematic impositions sometimes provoked by delay. Second, reopening the case and enforcing the settlement agreement presents no prejudice to the interests of efficient judicial administration. Indeed, affording Plaintiffs this extension enhances judicial administration by vindicating the carefully negotiated resolution of this Byzantine litigation. Third, the good faith of Plaintiffs and their counsel is undisputed. The capstone is the fact that, eliminating non-work days, the Motion to Enforce was filed only four days after the sixty-day deadline.

It would probably be an abuse of discretion under these compelling circumstances not to find excusable neglect pursuant to rule 60(b), reopen the case, and enforce the Agreement. In any event, allowance of Plaintiffs' motion was surely within the court's discretion under Rule 60(b).

The court's findings should be clear. First, the court finds that the filing by Plaintiffs of the Motion to Enforce Settlement Agreement (Dkt. No. 29) four work days after the sixty-deadline fell within the umbrella of "excusable neglect" as countenanced by Rule 60(b), *Pioneer,* and *Pratt.*[4] Second, Minor had an obligation to oppose this motion in a timely fashion. Third, following Minor's failure to oppose, the court's allowance of the motion constituted a proper exercise of retained jurisdiction to extend the sixty-day period and enforce the settlement agreement.

Obviously, this ruling gives the court now the continuing jurisdiction to enforce its own order. As noted by the First Circuit in *Pratt,* jurisdiction is retained by the court, as required by *Kokkonen,* during the sixty-day period. 109 F.3d at 21 n. 5. By unavoidable implication, that same jurisdiction is retained during any period by which the court properly extends the sixty-day period in order to insure that a settlement is enforced. Put differently, the court has the same subject matter jurisdiction now that it would have had if the motion to enforce the settlement had been filed a week earlier.

Based on the foregoing, the court will deny Minor's Motion to Vacate the Order of the Court Granting the Plaintiffs' Motion for Settlement Agreement Enforcement (Dkt. No. 30).

### B. *The Motion to Adopt the Proposed Order*

This leaves Plaintiffs' Motion to Adopt the Proposed Order (Dkt. No. 35). As noted above, the Motion to Enforce Settlement Agreement (Dkt. No. 29) sought ei-

---

**4.** The fact that Plaintiffs' motion was not explicitly titled as being offered under Rule 60(b) is of no import. In substance the motion sought relief from the court's sixty-day order of dismissal and enforcement of the Agreement. To the extent necessary, the court has construed the Motion to Enforce Settlement Agreement (Dkt. No. 29) as a motion pursuant to Rule 60(b), anchored upon a valid claim of excusable neglect.

ther an order compelling Minor to sign the Mutual Release or an order providing that she would be bound by the terms of the Mutual Release both in her personal and her representative capacities under the terms of the Agreement she signed. Given the court's denial of Minor's motion to vacate the court's allowance of the motion to enforce, the court has the power and responsibility to see that the goal of the motion to enforce is effectuated.

The Motion to Adopt the Proposed Order has as its goal, in part, to give effect to the court's allowance of Plaintiffs' motion to enforce. Apart from recognizing the denial of Minor's motion to vacate, the proposed order would formally extend the sixty-day dismissal period pursuant to Fed.R.Civ.P. 60(a), would consolidate Plaintiffs' two cases *nunc pro tunc*, would direct Minor to sign the Mutual Release (or be deemed to have done so), and would require Minor to pay attorneys' fees and costs.

With regard to the substantive portion of the proposed order, Minor offers in opposition only the personal and subject-matter jurisdiction arguments already rejected above. She separately opposes any award of fees and costs on the ground that no statutory or common law authority would justify it.

The Motion to Adopt Proposed Order will be allowed, in part. The court will, by separate order, compel Minor to execute the Mutual Release in the form attached to the Motion to Enforce Settlement Agreement (Dkt. No. 29) within fourteen days, or, alternatively, will deem the Mutual Release to have been signed by Lisa Minor individually and as Trustee of the Ellen Abrams Trust effective on the fourteenth day. Although it will continue to be administratively closed, the case will be subject to the court's ongoing retained jurisdiction to enforce the terms of the parties' negotiated Agreement by whatever mechanisms may be available to the court.

In all other respects the Motion to Adopt Proposed Order, including the portion seeking fees and costs, will be denied.

## IV. CONCLUSION

For the reasons stated above, the Motion to Vacate the Order on the Motion for Settlement (Dkt. No. 30) is hereby DENIED, and the Motion to Adopt the Proposed Order (Dkt. No. 35) is hereby ALLOWED, in part. A separate order will issue.

It is So Ordered.

### ORDER REGARDING MOTION TO ADOPT PROPOSED ORDER
(Docket No. 35)

For the reasons set forth in the Memorandum and Order issued this day, the court hereby orders as follows:

1. Lisa Minor is ordered to execute the mutual release attached as Exhibit B to the Motion for Settlement Agreement Enforcement (Dkt. No. 29), within fourteen days.

2. If Lisa Minor fails to comply with this order and execute the mutual release within fourteen days, she will be deemed conclusively to have executed the release both individually and in her representative capacity.

3. Although this case will remain administratively closed, the court will retain jurisdiction to enforce the terms of the negotiated settlement agreement.

It is So Ordered.