In re NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY SALES PRACTICES LITIGATION.

James E. Nabors, et al., Plaintiffs,

v.

New England Mutual Life Insurance Company, et al., Defendants.

Benita Battles, Plaintiff,

v.

New England Mutual Life Insurance Company, et al., Defendants.

Albert J. Singletary, et al., Plaintiffs,

v.

New England Mutual Life Insurance Company, et al., Defendants.

Barbara Ann Primer, et al., Plaintiffs,

v.

New England Mutual Life Insurance Company, et al., Defendants.

Betty Faigenblat and Mark Faigenblat, Plaintiffs,

v.

New England Mutual Life Insurance Company, et al., Defendants.

No. MDL–1105 (REK), C.A. 96–11534–REK, C.A. 01–11047–REK, C.A. 01–11048–REK, C.A. 01–11439–REK, C.A. 01–10506–REK, C.A. 98–10249–REK.

United States District Court, D. Massachusetts.

Oct. 11, 2001.

Joseph J. DePalma, Goldstein, Lite & De-Palma, Newark, NJ, Richard A. Lockridge, Earle F. Kyle, Aaron A. Dean, Lockridge, Grindal, Nauen & Holstein, Minneapolis, MN, Robert W. Biederman, Stephen Hubbard, Hubbard & Biederman, Dallas, TX, Kenneth G. Gilman, David Pastor, Gilman and Pastor, LLP, Saugus, MA, for Edwin Suib.

Joseph J. DePalma, Goldstein, Lite & De-Palma, Newark, NJ, Richard A. Lockridge, Earle F. Kyle, Aaron A. Dean, Lockridge, Grindal, Nauen & Holstein, Minneapolis, MN, Robert W. Biederman, Stephen Hubbard, Hubbard & Biederman, Dallas, TX, Joel P. Suttenberg, Law Office of Joel P. Suttenberg, Boston, MA, for Paul A. Wischmeyer.

**8**

Joseph J. DePalma, Goldstein, Lite & De-Palma, Newark, NJ, Richard A. Lockridge, Earle F. Kyle, Aaron A. Dean, Lockridge, Grindal, Nauen & Holstein, Minneapolis, MN, Robert W. Biederman, Stephen Hubbard, Hubbard & Biederman, Dallas, TX, Nancy F. Gans, Stephen Moulton, Moulton & Gans, Boston, MA, for Clay M. King.

Joseph J. DePalma, Goldstein, Lite & De-Palma, Newark, NJ, Richard A. Lockridge, Earle F. Kyle, Aaron A. Dean, Lockridge, Grindal, Nauen & Holstein, Minneapolis, MN, Robert W. Biederman, Stephen Hubbard, Hubbard & Biederman, Dallas, TX, for Kenneth A. McRaney.

Fred Isquith, Wolf, Haldenstein, Adler, Freeman & Herz, New York City, Joseph J. DePalma, Goldstein, Lite & DePalma, Newark, NJ, Richard A. Lockridge, Earle F. Kyle, Aaron A. Dean, Lockridge, Grindal, Nauen & Holstein, Minneapolis, MN, Robert W. Biederman, Stephen Hubbard, Hubbard & Biederman, Dallas, TX, for Sarah K. Steiner.

Clinton A. Krislov, William Bogot, Krislov & Associates, Ltd., Chicago, IL, for Harold Siagel and Edmund S. Goulder.

Diane A. Nygaard, Nygaard Law Firm, Leawood, KS, for Robert Simpson.

James I. Weprin, James P. Langendorf, Froelich & Weprin Co., L.P.A., Dayton, OH, for Magdy Migally.

Robert T. Naumes, Thornton & Naumes, LLP, Boston, MA, for James E. Nabors and Benita Battles.

Richard A. Lockridge, Earle F. Kyle, Aaron A. Dean, Lockridge, Grindal, Nauen & Holstein, Minneapolis, MN, Maria Bobonis-Zequeira, Antonio Borres, Woods & Woods, Hato Rey, PR, for Betty Faigenblat.

John P. Zavez, Berman, DeValerio & Pease, L.L.P., Boston, MA, for Michelle J. Muszynski and Paul J. Muszynski.

John L. Davidson, Frazer Davidson, PA, Jackson, MS, for Albert J. Singletary.

Peter S. Terris, Tamara S, Wolfson, Kenneth W. Salinger, Stephen L. Coco, Palmer & Dodge, Boston, MA, Alan L. Briggs, Squire, Sanders & Dempsey, Washington, DC, for New England Mutual Life Insurance.

Michael J. Lacek, Peter S. Terris, Constantine Athanas, Palmer & Dodge, Boston, MA, for Metropolitan Life Ins. Co.

Allan M. Zaffiro, Sarannah, GA, Pro se.

Warren D. Hutchinson, Donovan Hatem · LLP, Boston, MA, for John Terrill.

## MEMORANDUM AND ORDER

KEETON, District Judge.

### Introduction

Now pending before this court are:

(1) Joint 6(b) Motion of Plaintiffs James E. Nabors et al. and Benita Battles for Enlargement of Time or, in the Alternative, 60(b)(1) Motion for Relief from Judgment (Docket No. 285, filed July 31, 2001) with accompanying memorandum (Docket No. 286, filed August 6, 2001);

(2) Defendant New England Mutual Life Insurance Company's (New England) Motion to Enforce Court's Final Order and Judgment and Enjoin State Court Action (Docket No. 287, filed August 7, 2001);

(3) Defendant New England's Opposition to Plaintiffs' [James Nabors and Benita Battles' Joint] Motion for Enlargement of Time or Motion for Relief From Judgment (Docket No. 288, filed August 20, 2001) with accompanying memorandum in support thereof (Docket No. 289, filed August 20, 2001);

(4) Defendant Agents' Opposition to Plaintiffs' James E. Nabors et al. and Benita Battles Joint 6(b) Motion for Enlargement of Time or, in the Alternative, 60(b)(1) Motion for Relief from Judgment (Docket No. 290, filed August 23, 2001);

(5) Joint Opposition of Plaintiffs James E. Nabors et al. and Benita Battles to New England's Motion to Enforce Court's Final Order and Judgment and Enjoin State Action (Docket No. 291, filed August 22, 2001);

(6) Joint Rebuttal Memorandum of Plaintiffs James E. Nabors et al. and Benita Battles in Support of Rule 6(b) Motion for Enlargement of Time or, in the Alternative, Rule 60(b)(1) Motion for Relief from Judgment (Docket No. 292, filed August 27, 2001);

(7) Plaintiff Albert J. Singletary et al.'s 6(b) Motion for Enlargement of Time or, in the Alternative, 60(b)(1) Motion for Relief from Judgment (Docket No. 293, filed Sept. 6, 2001) with accompanying memorandum in support thereof (Docket No. 294, filed Sept. 6, 2001);

(8) Defendant New England's Opposition to Plaintiff [Albert J. Singletary]'s Motion for Enlargement of Time or Motion for Relief from Judgment (Docket No. 295, filed September 20, 2001) with accompanying memorandum in support thereof (Docket No. 296, filed September 20, 2001);

(9) Defendant New England's Motion to Dismiss Claims of Albert Singletary with Prejudice (Docket No. 298, filed September 14, 2001);

(10) Joinder of Defendant Fulton A. Jordan, d/b/a Jordan & Associates to Opposition to Plaintiffs' Motion for Enlargement of Time or, in the Alternative; Motion for Relief from the Judgment (Docket No. 300, filed Sept. 21, 2001);

(11) Joint Motion of Defendant New England Mutual and Plaintiff Barbara Ann Primer to Dismiss, presented orally at the Case Management Conference of September 21, 2001 and Accompanying Draft Order (Docket No. 302); and

(12) Plaintiffs Betty and Mark Faigenblat's Motion to Request Suggestion of Remand to Transferor District Court (Docket No. 281, filed June 25, 2001).

### Facts

This Class Action arose from the consolidation of several putative class actions under a July 17, 1996 Transfer Order by the Judicial Panel on Multi–District Litigation. (Docket No. 1, filed August 26, 1996). Thereafter several so-called "tag along" actions were added to the consolidated proceedings. The claims asserted by the various parties in the consolidated proceedings related to New England's sales practices, including, among other things, that the dividend and interest crediting rates used in connection with the sale of permanent life insurance policies were not supportable.

On September 12, 1996, the law firm Milberg Weiss Bershad Hynes & Lerach, LLP was designated as lead counsel to act on behalf of the plaintiffs in the consolidated proceedings. On October 1, 1998 the Court issued a Memorandum and Order certifying a class pursuant to Fed.R. Civ. P. 23(b)(1). *See In re New England Mut. Life Ins. Co.*, 183 F.R.D. 33, 37 (D.Mass.1998).

On May 19, 2000 the parties executed and submitted a Stipulation of Settlement and the Court preliminarily certified the class for purposes of settlement only and preliminarily approved the Proposed Settlement. *See* Findings And Order Conditionally Certifying A Class For Settlement Purposes, Preliminarily Approving The Class Settlement, Directing Issuance Of A Class Notice To The Class And Scheduling A Fairness Hearing (Docket No. 111). The certified settlement class included all persons and entities who have or had an ownership interest in any permanent life insurance policy issued by New England in the United States during the period from January 1, 1983 through August 31, 1996 pursuant to an individual sale, with noted exceptions not applicable here. The Court found that the proposed settlement was "within the range of possible approval and sufficient to warrant sending notice to the Class." *Id.* at 4. In addition, the Court approved the Class Notice Package, the Publication Notice and the methodology of notice and scheduled the Fairness Hearing for October 4, 2000.

The Notice Package sent to the owners of the approximately 600,000 policies included in the Class explained, among other items, the procedure for opting out of the class and the consequences of failing to exclude a policy from the settlement. In particular, the Notice provided:

If the Court approves the proposed settlement, you must release (give up) all claims that have been or could have been asserted in this lawsuit, as set forth in the Release attached as Appendix A, and the case will be dismissed on the merits and with prejudice. **If you remain in the Class with respect to a Policy and accept the benefits of the settlement, you may not assert any of those claims in any other**

**lawsuit or proceeding with respect to that Policy, *including any other lawsuit or proceeding already in progress.***

Notice at 15 (bold and italics in original).

The mailing of the Notice Packages began on July 10, 2000 and ended on July 28, 2000. In order to be excluded from the class and avoid being bound by the settlement agreement, Class Members were required to "opt out" by mailing a written request for exclusion, postmarked by September 5, 2000. Specifically, the Notice stated:

IF YOUR EXCLUSION REQUEST IS POSTMARKED AFTER SEPTEMBER 5, 2000:

YOU WILL REMAIN A MEMBER OF THE CLASS, AND YOU WILL BE BOUND BY THE SETTLEMENT AND BY ALL ORDERS AND JUDGMENTS IN THIS LAWSUIT; AND YOU WILL NOT BE ABLE TO FILE, PARTICIPATE IN OR CONTINUE ANY OTHER LAWSUIT OR PROCEEDING BASED ON OR RELATING TO THE CLAIMS, CAUSES OF ACTION, FACTS OR CIRCUMSTANCES OF THIS CASE.

Notice at 16 (emphasis in original).

A list of all policy owners timely requesting exclusion was provided to the Court in connection with New England's memorandum in support of approval of the class action settlement. After conducting the Fairness Hearing on October 4, 2000, the Court made its Final Order Approving Class Action Settlement (Docket No. 263) (the "Final Order"). As part of the Final Order, the Court declared that:

All Class Members who have not been timely excluded from the Class with respect to a Policy are hereby permanently barred and enjoined from (i) ... maintaining ... any other claim, lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based on, arising out of, or relating to the claims and causes of action, or the facts and circumstances relating thereto, in this Action and/or the Released Transactions as to that Policy ... The Court finds that issuance of this permanent injunction is necessary and appropriate in aid of the Court's jurisdiction over the action and to protect and effectuate the Court's Final Order and Judgment.

Final Order at ¶ 13. In addition, the Final Order expressly preserved the parties' right to a later action to enforce the terms of the Final Judgment (¶ 14) and, in anticipation of such action, the Court stated that it "expressly retains jurisdiction as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Final Order and the accompanying Final Judgment" including "permanently enjoining Class Members from ... pursuing related proceedings" (¶ 19).

Before September 5, 2000, the Nabors Plaintiffs, Plaintiff Battles, the Primer Plaintiffs and the Singletary Plaintiffs all notified their counsel of their desire to be excluded from the class settlement and to pursue individual claims in the state courts of Mississippi. At the time these plaintiffs were all represented by the same counsel. Counsel created opt-out forms containing all the required information for effectuating that desire. Lesa Rickman, a paralegal employed by Plaintiffs' counsel, gathered these forms and placed them in a single large envelope, affixing appropriate postage using standard 33–cent stamps. According to her affidavit, which is uncontested by the defendants, Ms. Rickman delivered the envelope by hand to the United States Postal Service's General Mail Facility in Jackson, Mississippi before 5:00 p.m. on September 5, 2000. The envelope was not postmarked until September 6, 2000, and the Defendants therefore concluded that the opt-outs were not timely and that the plaintiffs were bound by the settlement.

On November 3, the Nabors Plaintiffs sued the Defendants in a Mississippi State Court alleging violations of state law. Soon thereafter, in a number of separate class actions, the other plaintiffs did likewise. Each of these actions was separately removed to the United States District Court for the Southern District of Mississippi, and subsequently transferred here by the Panel on Multidistrict Litigation. Although it appears that the plaintiffs were unaware of the defendants' position on their opt-outs when they filed the state court actions, they were at least noti-

fied when their actions were removed to federal court. The removal petitions each asserted jurisdiction on the basis of the All Writs Act, and stated that the plaintiffs were bound by this court's final judgment. The first action, *Nabors,* was removed on November 30, 2000. Subsequently, on December 21, 2000, the Nabors Plaintiffs filed a Rule 6(b) and Rule 60(b) Motion for Enlargement and for Relief from Judgment in the United States District Court for the Southern District of Mississippi. On January 26, 2001, New England moved to stay the proceedings in these actions pending their transfer to the Panel on Multidistrict Litigation. These cases were subsequently stayed and transferred to this court. As far as can be discerned from the many dockets associated with these actions, no other plaintiff filed a motion pursuant to Rule 60 until July 31, 2001, when the Nabors Plaintiffs and Plaintiff Battles filed their joint motion for relief.

### Rule 60(b) Motions

Because Final Judgment entered on this matter on October 4, 2000, a Rule 6(b) order allowing an enlargement of time would be fruitless. Therefore, Plaintiffs' motions are more appropriately considered as Rule 60 requests for relief from the judgment. As a practical matter, because the standard applicable to these facts under either rule is that of excusable neglect, the analysis for both rules is identical.

### A. Timeliness of the Plaintiffs' Motions

Defendants first assert that the Plaintiffs' Motions are untimely. Federal Rule of Civil Procedure 60(b) states, in part:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does no limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding . . .

Fed. R. Civ. Proc. 60(b).

It is well-established that the one-year limitation period is an outer limit, and that even a motion brought within a year should be rejected if not made within a reasonable time. *See Berwick Grain Co. v. Illinois Dept. of Agriculture,* 189 F.3d 556, 560 (7th Cir.1999). "What constitutes reasonable time, however, depends on the facts of each case. The relevant considerations include whether the parties have been prejudiced by the delay and whether a good reason has been presented for failing to take action sooner." *United States v. Boch Oldsmobile, Inc.,* 909 F.2d 657, 660–61 (1st Cir. 1990).

Defendants urge that each of the motions for relief under Rule 60(b) must be dismissed as untimely. They assert that the plaintiffs "inexplicably" let nine or ten months elapse between the time the actions were removed and the time the motions were filed. This assertion is false with respect to the Nabors Plaintiffs and is not compelling with respect to the others. On December 21, 2000, the Nabors Plaintiffs filed, in the United States District Court for the Southern District of Mississippi, Jackson Division, their Motion in Opposition to Defendant New England's Motion to Dismiss or Alternatively to Transfer and Stay and **Plaintiffs' Motion for Relief from Judgment and for Enlargement of Time** (Civil Action No. 3:00CV912BN, Docket No. 9) (emphasis added). In that motion, the Nabors Plaintiffs requested that "the Court apply the discretionary equitable relief available to them under Rule 60(b)(1) and 6(b)(2) F.R.C.P. claiming excusable neglect." The Defendants urge that the "fact that Plaintiffs mentioned Rule 60 relief in their December 21, 2000 Opposition to New England's Motion to Transfer the action to this court is of no consequence, since any request for relief had

to be made directly with this court." Docket No. 289 at n. 6. On this point, the defendants are wrong for two reasons. First, transferor courts in actions transferred to this court by the Panel on Multidistrict Litigation must send the complete original file or a certified copy thereof to this court. *See* R. PROC. JUD. PANEL ON M.D.L. 1.6. Therefore, matters that were properly before the transferor court remain before this court as transferee. Second, the Commentary to Rule 60 specifically points out that, in addition to filing the motion in the court that originally ordered judgment, parties may also pursue "a new or independent action to obtain relief from a judgment, which action may or may not be begun in the court which rendered judgment." *See* F.R.C.P. 60 Advisory Committee's note to 1946 Amendment; *see also Crosby v. Mills,* 413 F.2d 1273 (10th Cir. 1969).

■ Even if no plaintiff had filed an earlier Rule 60 motion, the delay was not unreasonable. The procedural posture of these cases was fairly complex before their transfer here. The plaintiffs claim that when they filed their state court actions, they believed they were no longer class members. Thereafter, each was removed to federal court, and a series of motions to dismiss, to remand, to stay, and to transfer ensued. The Nabors Plaintiffs and Plaintiff Battles filed their Rule 60(b) motion just two months after *Nabors* was transferred here last June, and Plaintiff Singletary's Motion was filed mere weeks after his case was transferred. Although these motions could have been brought before the transfer, it was not unreasonable to delay their filing until the matters reached their final destination in this court.

### B. Excusable Neglect

■ All the pending motions in these matters are various ways of arguing the same point of contention: whether or not the failure to ensure that the envelope containing the opt-outs was postmarked by September 5 constitutes excusable neglect. An order of this court that the omission was excusable neglect and that the plaintiffs are entitled to relief pursuant to Rule 60(b) would have the practical effect of allowing the Mississippi state actions to go forward in state court. On the other hand, an order finding that the omission was not excusable would require that the plaintiffs' motions be dismissed, which would have the practical effect of limiting them to their allotted recovery under the settlement agreement.

The Supreme Court defined the standard for a finding of excusable neglect in *Pioneer Investment Services v. Brunswick Associates.* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Although the Court in *Pioneer* was construing a Bankruptcy Rule, it expressly indicated that the definition in the Bankruptcy context paralleled that of Rule 60(b). *See* 507 U.S. at 393, 113 S.Ct. 1489; *Pratt v. Philbrook,* 109 F.3d 18, 19 (1st Cir.1997). The *Pioneer* Court defined the scope of "excusable neglect" as encompassing "both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." 507 U.S. at 388, 113 S.Ct. 1489. With specific reference to the Federal Rules of Civil Procedure, the Court noted that:

> for purposes of Rule 60(b), "excusable neglect" is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence. Because of the language and structure of Rule 60(b), a party's failure to file on time for reasons beyond his or her control is not considered to constitute "neglect."

*Id.* at 394, 113 S.Ct. 1489 (citation omitted).

On the matter of what neglect is "excusable," the Court stated:

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account of all the relevant circumstances surrounding the party's omission. These include, as the Court of Appeals found, the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* at 395, 113 S.Ct. 1489 (footnote omitted). Finally, in the face of an argument that the litigants should not be held responsible for the omissions of their attorneys, the Court pointed out that "in determining whether [the movants'] failure to file . . . prior to the bar date was excusable, the proper focus is upon whether the neglect of respondents *and their counsel* was excusable." *Id.* at 397, 113 S.Ct. 1489 (emphasis in original).

The First Circuit embraced the *Pioneer* analysis in *Pratt.* 109 F.3d 18. In *Pratt,*

> At a settlement conference with the trial judge, the parties announced they had agreed upon terms to resolve this case. The trial judge told them that he would enter a 60–day Settlement Order of Dismissal and invited them to return to him if problems arose during that time period which impeded consummation of the settlement. Within a day such problems arose but the parties did not alert the court. After sixty days passed and the trial court heard nothing further from the parties, the dismissal became final by operation of the settlement order. About three weeks later, plaintiff's counsel, who ultimately framed his failure to forestall the dismissal as an instance of excusable neglect under Fed.R.Civ.P. 60(b), began to seek to have the dismissal vacated and the case reopened. The trial judge declined, observing that if a settlement order of dismissal were vacated under such circumstances, the order would essentially be meaningless.

109 F.3d at 18. The First Circuit remanded the case to the district court to apply the *Pioneer* analysis. In its order of remand, the First Circuit commented on the defendant's claim of prejudice if the case was reopened:

> From our vantage point it is difficult to see what cognizable prejudice, in the sense, for example, of lost evidence, would come to the defendant from reopening the case. Of course, it is always prejudicial for a party to have a case reopened after it has been closed advantageously by an opponent's default. But we do not think that is the sense in which the term "prejudice" is used in *Pioneer.* Moreover, the delay was

> not particularly extended. Impact on judicial proceedings is arguably of concern; but if the parties had reported on the 59th day that the settlement could not be consummated, it would not appear to have a materially less significant impact than it does here when the report occurred some 21 days later.

109 F.3d at 22 (footnote omitted).

More recently, the First Circuit noted that although "many courts have indicated that Rule 60(b) motions should be granted liberally, this Circuit has taken a harsher tack," and that the extraordinary relief afforded by Rule 60(b) should be granted only in exceptional circumstances. *See Davila–Alvarez v. Escuela de Medicina Universidad Central Del Caribe,* 257 F.3d 58, 63–64 (1st Cir.2001) (footnote omitted). Moreover, the rule must be applied with an eye toward the importance of the finality of judgments. *See id.*

In this case at bar, then, this court applies the four *Pioneer* factors to its determination of whether or not the plaintiffs have demonstrated that the circumstances are so exceptional that they are entitled to relief from judgement. First, there is not any suggestion in the record that plaintiffs' counsel acted with bad faith or engaged in any sort of gamesmanship in failing to meet the deadline, an important *Pioneer* factor. *See Pioneer,* 507 U.S. at 395, 113 S.Ct. 1489; *Pratt v. Philbrook,* 174 F.R.D. 230 (D.Mass.1997) (on remand from the First Circuit, denying Rule 60(b) relief where counsel acted with objective bad faith). Second, the plaintiffs missed the opt-out deadline by a single day. In similar situations, courts have allowed Rule 60(b) relief in the face of longer delays. *See Pratt,* 109 F.3d at 22 (three weeks); *In re Orthopedic Bone Screw Products Liability Litigation,* 246 F.3d 315, 324 (3d Cir.2001) (seven months). In *Pratt,* however, the 60–day limitation was imposed by the court. Its analysis with respect to delay, therefore, is clearly not applicable to this situation, where the parties bargained for a specific cut-off date in the settlement negotiations. It is an elementary principle of contract law that when parties bargain for a mutually-accepted date, that date has a special legal significance to the agreement. Here, New England paid

a high price for finality with respect to the plaintiff class. As part of the settlement, they will pay an estimated $100 million in general relief, between $72.5 and $90 million in claim review, and $27.4 million in attorneys' fees. They are therefore entitled to the benefit of the certainty and finality that is contemplated by Rule 23, their agreement with the class representatives, and this court's final judgment.

A third factor, the reason for the delay, also weighs slightly in favor of the defendants. Miss Rickman's affidavit is uncontested. I therefore assume that she did, in fact, deliver the envelope to the post office before 5:00 p.m. on September 5. The United States Postal Service defines a postmark as a "postal cancellation imprint on letters flats (sic) and parcels. The imprint shows date and the name, state and ZIP Code of the post office or sectional center facility that accepted custody of the mailpiece." UNITED STATES POSTAL SERVICE, GLOSSARY OF POSTAL TERMS, Publication No. 32 at 90 (May, 1997). According to this definition, the post office arguably did not accept custody of the envelope until September 6. Neither party has offered any explanation for this discrepancy. It is well-established that the party that selects the mode of transmission undertakes the risks associated with that method. In this case, that means the plaintiffs bore the risk that the envelope would not be timely postmarked, and should have or could have taken further steps to ensure compliance. Although it may in some circumstances be reasonable to assume that a package deposited before 5:00 p.m. will be postmarked that day, when the postmark itself has some legal significance a better course, and one that would have negated any need for this litigation, would have been to ensure that the envelope was delivered substantially before 5:00 p.m.... Regardless of what steps might have been taken, the risks associated with leaving the envelope at the post office rest with the plaintiffs and militate toward denying their motions.

The final factor, and the one that is most persuasive in this case, is the danger of prejudice to the defendants if the plaintiffs' motions are granted. The plaintiffs urge that New England would not be prejudiced by Rule 60(b) relief because New England is currently engaged in a declaratory judgment action in the Southern District of Mississippi against all those who timely opted out. Since New England is already engaged in litigation with some putative class members who opted out, they claim, adding more parties to that action can not result in prejudice against New England. Plaintiffs point to *Orthopedic Bone Screw* in support of this contention.

In *Orthopedic Bone Screw*, the Third Circuit allowed a class member to opt in to a settlement roughly seven months after the cut-off date for doing so. 246 F.3d 315 There, the settlement agreement capped the defendant's total liability at $100 million. The court therefore recognized "no argument that [the defendant] will be prejudiced" by including the plaintiff in the class. *Id.* at 323–24. This case is of no avail to the plaintiffs here. The potential liability of New England and other defendants could be substantially different if plaintiffs are allowed to pursue other paths to recovery in the state courts rather than being bound by the terms of the settlement. The mere fact that defendants have taken steps to protect themselves from further recovery by those Mississippi plaintiffs who properly opted out does not assure defendants of success in that regard. Moreover, if defendants do not prevail in that litigation, they may face still more lawsuits from those parties. Adding to the potential plaintiffs in those actions by granting Rule 60(b) relief in this matter would expose defendants to the very liability that they hoped to avoid by entering into the settlement. Although defendants are currently at risk for some liability, this existing risk does not obviate the prejudice that would result from exposing defendants to further litigation.

As the Supreme Court said in *Pioneer*, the decision whether a neglect is "excusable" is "at bottom an equitable one." 507 U.S. at 395, 113 S.Ct. 1489. Weighing the equities in this case within the *Pioneer* framework, I determine that Rule 60(b) relief ought to be denied and the plaintiffs' motions DISMISSED.

## Motions for Enforcement, Remand, and Dismissal

Because the plaintiffs' motions are dismissed, plaintiffs are bound by the earlier judgment. Further consideration of defendants' motion to dismiss and motion to enforce this court's final order and judgment is therefore unnecessary and those motions are also DISMISSED.

Also, the joint motion of Defendant New England Mutual and Plaintiff Barbara Ann Primer is ALLOWED.

At the Case Management Conference of September 21, 2001, I heard argument concerning the remand of the Faigenblat Plaintiffs' action to the Federal District Court for the District of Puerto Rico. New England does not oppose this motion and stated at the conference that because the Faigenblats did not assert class allegations, their action was not disposed of in the class settlement. Although I agree that remand to the Puerto Rico court may be particularly appropriate when assented to by both parties, it is my view that Rule 7.6 of the Rules of the Judicial Panel on Multidistrict Litigation places the authority to remand solely with that Panel. Indeed, Plaintiffs' motion does not request that I remand the case, but merely that I make a suggestion of remand to the Panel. Because I am convinced that remand is appropriate, Plaintiffs' motion is ALLOWED, and the Clerk is directed to transmit a copy of this memorandum to the Judicial Panel on Multidistrict Litigation as a Suggestion of Remand pursuant to Rule 7.6(c) of the of the Rules of the Judicial Panel on Multidistrict Litigation.

### ORDER

For the foregoing reasons it is ordered:

(1) Joint 6(b) Motion of Plaintiffs James E. Nabors et al. and Benita Battles for Enlargement of Time or, in the Alternative, 60(b)(1) Motion for Relief from Judgment (Docket No. 285, filed July 31, 2001) is DISMISSED;

(2) Defendant New England Mutual Life Insurance Company's Motion to Enforce Court's Final Order and Judgment and Enjoin State Court Action (Docket No. 287, filed August 7, 2001) is DISMISSED;

(3) Plaintiff Albert J. Singletary et al.'s 6(b) Motion for Enlargement of Time or, in the Alternative, 60(b)(1) Motion for Relief from Judgment (Docket No. 293, filed Sept. 6, 2001) is DISMISSED;

(4) Defendant New England's Motion to Dismiss Claims of Albert Singletary with Prejudice (Docket No. 298, filed September 14, 2001) is DISMISSED;

(5) Joint Motion of Defendant New England Mutual and Plaintiff Barbara Ann Primer to Dismiss, presented orally at the Case Management Conference of September 21, 2001 and Accompanying Draft Order (Docket No. 302) is ALLOWED. Pursuant to the parties' request, this order is with prejudice with respect to only Barbara Ann Primer personally and not with respect to the remaining plaintiffs represented by her;

(6) Plaintiffs Betty and Mark Faigenblat's Motion to Request Suggestion of Remand to Transferor District Court (Docket No. 281, filed June 25, 2001) is ALLOWED; and

(6) The Clerk is directed to enter on a separate document a Final Judgment as Follows:

For the reasons stated in the Memorandum of this date, Civil Actions No. 01–11047–REK, 01–11048–REK, 01–11439–REK, and 01–10506–REK are DISMISSED; Civil Action No. 98–10249–REK is referred to the Judicial Panel on Multidistrict Litigation and the Clerk is directed to transmit a copy of the Memorandum of this date and this Final Judgment to the Panel as a suggestion of remand pursuant to Rule 7.6(c).