# United States Court of Appeals

## For the First Circuit

No. 03-1520

GARY A. BENNETT,

Plaintiff, Appellee,

v.

CITY OF HOLYOKE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Smith,[*] District Judge.

John H. Fitz-Gibbon, with whom Harry L. Miles and Green, Miles, Lipton, White & Fitz-Gibbon were on brief, for appellant.
Tani E. Sapirstein, with whom Sapirstein & Sapirstein was on brief, for appellee.

March 22, 2004

[*]Of the District of Rhode Island, sitting by designation.

**SELYA**, **Circuit Judge**. After a jury found for plaintiff-appellee Gary A. Bennett in a whistleblower action, his employer, the City of Holyoke (the City), sought to set aside the verdict by reason of the plaintiff's failure to comply with a statutory notice requirement. Alternatively, it asked the district court to defenestrate the ancillary award of prejudgment interest. The court rejected both of these overtures, and the City appealed. We affirm: the City has not properly preserved the first issue and the Massachusetts whistleblower statute broadly authorizes awards of prejudgment interest against municipal defendants.

## I.   BACKGROUND

The plaintiff served as a Holyoke police officer for twenty-one star-crossed years. The district court's opinion on summary judgment, Bennett v. City of Holyoke, 230 F. Supp. 2d 207, 213-19 (D. Mass. 2002), chronicles the long history of rancor between the plaintiff and the police department, and we need not rehearse that history here. For our purposes, it suffices to say that, during his tenure, the plaintiff became a self-appointed crusader against what he perceived as corruption at the highest levels of the police department. In time, he filed a complaint on behalf of a fellow officer with the Massachusetts Commission Against Discrimination (MCAD) and shared the results of his internal investigations with the state Attorney General.

According to the plaintiff, these steps provoked immediate retaliation by those in power. They disciplined him for failing to comply with a departmental policy requiring officers to follow certain procedures before complaining to outside agencies. Then, they twice passed him over for promotion to lieutenant despite his outstanding test scores. The plaintiff responded by filing another MCAD complaint, this time on his own behalf. The relationship between the parties went steadily downhill from there.

In 1998, the plaintiff retired. In short order, he sued the City, the mayor, and several police department hierarchs. His complaint, filed in a Massachusetts state court, limned mainly state-law claims but included a claim brought pursuant to 42 U.S.C. § 1983. Seizing upon this appendage, the defendants removed the action to the United States District Court for the District of Massachusetts. See 28 U.S.C. §§ 1331, 1441.

In due course, the district court disposed of several of the claims on summary judgment. Bennett, 230 F. Supp. 2d at 231-32. It then embarked upon a six-day trial with respect to the remaining claims. The jury found for the defendants on most of those claims,[1] but returned a $90,000 verdict against the City on

---

[1]The plaintiff has prosecuted a cross-appeal seeking to set aside the judgment on some of his unsuccessful claims (No. 03-1525). Although we consolidated the two appeals for briefing and argument, we decide them in separate opinions.

the whistleblower claim. The court subsequently added $41,278 in prejudgment interest and entered judgment accordingly.

The City responded with, inter alia, a motion to alter or amend the judgment, Fed. R. Civ. P. 59(e), by striking the award of prejudgment interest. The district court denied the motion. The City subsequently moved for relief from the judgment, Fed. R. Civ. P. 60(b), on the ground that the plaintiff had not complied with the notice provisions of the whistleblower statute. The court denied that motion as well. This appeal followed.

## II. APPELLATE JURISDICTION

Before reaching the merits of the appeal, we must address a threshold matter. The plaintiff notes that the City filed its notice of appeal a day late and maintains that this court lacks jurisdiction to hear the appeal. The City parries this thrust by pointing to the district court's extension of the filing date. The plaintiff replies that the extension was improvidently granted (and, thus, impuissant).

We recount the background needed to resolve this impasse. The applicable rule requires the filing of a notice of appeal in a civil case, not involving the federal government, "within 30 days after the judgment or order appealed from is entered." Fed. R. App. P. 4(a)(1)(A). This thirty-day period does not begin to run until after the entry of the order disposing of a motion for attorneys' fees so long as "the district court extends the time to

appeal under Rule 58." Fed. R. App. P. 4(a)(4)(A)(iii). The district court granted such an extension here, so that a notice of appeal would be considered timely if filed within thirty days of the court's adjudication of the plaintiff's application for attorneys' fees.

On March 6, 2003, the court issued a memorandum and order in which it awarded attorneys' fees to the plaintiff. That order started the running of the thirty-day period. See Fed. R. App. P. 4(a)(7)(A)(i) (providing that "entry" occurs at docketing for those orders the disposition of which does not require a separate document); see also Fed. R. Civ. P. 58(a)(1)(C) (stating that an order disposing of a motion for attorneys' fees does not require a separate document). Thus, the last day for filing a notice of appeal was Monday, April 7, 2003. See Fed. R. Civ. P. 6(a) (explaining how time periods are computed).

On March 18, however, the district court issued an amended judgment that, in effect, replicated its March 6 order. On April 8, 2003 — one day after the deadline — the City filed its notice of appeal and moved for a one-day extension. It asserted that it had been misled by the gratuitous entry of the amended judgment on March 18 and had assumed (erroneously, as matters turned out) that the appeal period would run from the date of that amended judgment.

The district court accepted this explanation and granted the one-day extension. In doing so, the court acknowledged that its own actions (in particular, the entry of the amended judgment) had created "confusion over the date of the [attorneys' fee] ruling." On this basis, the court determined that the City's neglect (i.e., not filing its notice of appeal on or before April 7) was excusable. The plaintiff challenges this determination.

Although the time parameters for filing notices of appeal usually are deemed "mandatory and jurisdictional," Browder v. Dir., Dep't of Corr., 434 U.S. 257, 264 (1978), those time parameters may be extended upon a showing of "excusable neglect or good cause." Fed. R. App. P. 4(a)(5)(A)(ii). That is precisely what the lower court found in this instance. We review a trial court's decision as to the existence vel non of excusable neglect for abuse of discretion. Mirpuri v. ACT Mfg., Inc., 212 F.3d 624, 627 (1st Cir. 2000). We discern none here.

Under the excusable neglect rubric, courts are permitted, when appropriate, to accept late filings caused by inadvertence or mistake. See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship., 507 U.S. 380, 388 (1993) (interpreting "excusable neglect" under the bankruptcy rules); see also Virella-Nieves v. Briggs & Stratton Corp., 53 F.3d 451, 454 n.3 (1st Cir. 1995) (holding that "Pioneer's exposition of excusable neglect . . . applies equally to Fed. R. App. P. 4(a)(5)"). A trial court's determination as to

whether an instance of neglect is (or is not) excusable has a significant equitable component and must give due regard to the totality of the relevant circumstances surrounding the movant's lapse.  Pioneer, 507 U.S. at 395.

Here, the circumstances plainly support the district court's ruling.  The one-day delay in this case was very brief; the entry of an essentially duplicative order obfuscated matters, rendering the delay (as the district court put it) "understandable"; and there is no indication of either bad faith or undue prejudice.  The lower court, which had the best coign of vantage, concluded that a one-day delay, in these circumstances, constituted excusable neglect — and there is no principled way that we can label that conclusion an abuse of discretion.  Where, as here, a district court takes an unusual procedural step and then admits that its actions have caused confusion over the proper time for filing a notice of appeal, an appellate court should not deem the decision to grant a brief extension of the filing date an abuse of discretion without some compelling justification for doing so. See, e.g., Alpha State Bank v. Ohio Casualty Ins. Co., 941 F.2d 554, 556 n.2 (7th Cir. 1991); see also Mirpuri, 212 F.3d at 631 (noting that "a plausible misconstruction" of a court order sometimes may satisfy the requirements for excusable neglect). There is no such justification here.

For these reasons, we conclude that we have jurisdiction over the City's appeal.

### III. THE WHISTLEBLOWER CLAIM

We turn next to the first of the City's two assignments of error. To recapitulate, after judgment had entered on the whistleblower claim, the City sought to set it aside on the ground that the plaintiff had failed to satisfy the notice requirement of the Massachusetts whistleblower statute, Mass. Gen. Laws ch. 149, § 185. The district court denied the motion, ruling that "[t]he notice issue, in the form now presented, was not raised with sufficient clarity before trial to justify disturbing the verdict." We review that ruling for abuse of discretion. See Farm Credit Bank v. Ferrera-Goitia, 316 F.3d 62, 65-66 (1st Cir. 2003). "We will find an abuse of discretion when we are convinced that the district court has made an error of law or has reached a plainly erroneous decision." Id. at 66.

The Massachusetts whistleblower statute prohibits a public employer — including a municipality, Mass. Gen. Laws ch. 149 § 185(a)(2) — from taking any retaliatory action against an employee who engages in protected activities. Retaliatory action is defined to include discharge, suspension, demotion, or any other action that adversely affects the terms and conditions of the employment. Id. § 185(a)(5). Protected activities include disclosing "to a public body an activity, policy or practice of the

-8-

employer . . . that the employee reasonably believes is in violation of a law." Id. § 185(b)(1). The term "public body" is defined broadly to include legislative, judicial, administrative, and law enforcement agencies at the federal, state, and local levels. Id. § 185(a)(3).

The whistleblower statute gives an aggrieved employee a private right of action against his or her employer. Id. § 185(d). Most whistleblower plaintiffs — there are exceptions, but we shall assume for argument's sake that none applies here — must satisfy a statutory notice requirement. According to the requirement, "the protection against retaliatory action . . . shall not apply to an employee who makes a disclosure to a public body unless the employee has brought the [allegedly illegal or corrupt] activity . . . to the attention of a supervisor . . . by written notice and has afforded the employer a reasonable opportunity to correct the activity." Id. § 185(c)(1). Since filing a suit constitutes disclosure to a public body, a prospective whistleblower plaintiff must give written notice of the alleged wrongdoing to the employer before filing a civil action. Dirrane v. Brookline Police Dep't, 315 F.3d 65, 73 (1st Cir. 2002).

The City contends that the plaintiff failed to provide it with this advance notice before filing suit, and the record supports this claim. The rub, however, is that the City did not rely upon this notice defense in the pretrial proceedings, at the

trial itself, during the charge conference, or in its motion for judgment as a matter of law.  When a party persistently sleeps upon its rights, waiver almost inevitably results.  Amcel v. Int'l Executive Sales, Inc., 170 F.3d 32, 35 (1st Cir. 1999) (finding waiver when affirmative defense was not raised in pretrial papers, during trial, or in motion for judgment as a matter of law); Correa v. Hosp. San Francisco, 69 F.3d 1184, 1195 (1st Cir. 1995) (same). By the time that the City advanced the defense for the first time in a post-trial motion for relief from judgment, it was too late.

The City offers several rebuttal arguments.  First, it notes that it referred to the notice requirement in its answer to the complaint.  But this was, at most, a glancing reference — and the City never followed through.  Simply mentioning a possible defense in an initial pleading, without further development in subsequent stages of the proceedings, does not preserve it for post-trial review.  Violette v. Smith & Nephew Dyonics, Inc., 62 F.3d 8, 11 (1st Cir. 1995); Wallace Motor Sales, Inc. v. Am. Motor Sales Corp., 780 F.2d 1049, 1067 (1st Cir. 1985).

The City also points out that it successfully contended in its motion for summary judgment that the plaintiff's failure to provide the statutorily required notice barred claims of retaliation stemming from the filing of charges with the MCAD.  See Bennett, 230 F. Supp. 2d at 219-20 (granting partial summary judgment for the City on this ground).  The City now suggests that

-10-

its raising of the notice defense in one context preserved that defense for all purposes. This is wishful thinking. The City's notice defense was tailored to the plaintiff's MCAD complaints. It did not address the plaintiff's failure to give notice either before complaining to the Attorney General or before filing suit. See id. at 220. As a result, the whistleblower claim went to the jury solely on the allegation of retaliation for the plaintiff's contacts with the state Attorney General.

That effectively rebuts the City's argument. Because the City did not previously argue what it argues now — that the plaintiff's failure to provide written notice before filing suit bars his whistleblower action in toto — it waived that defense. Raising a defense to a particular claim does not automatically preserve that defense with respect to other independent claims. See Kelly v. Foti, 77 F.3d 819, 822-23 (5th Cir. 1996); cf. Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 22 (1st Cir. 1998) (explaining that a party cannot preserve a claim by raising a related but factually distinct claim below).

The City's next argument focuses on timing. The district court entered judgment on the jury verdict on December 2, 2002; the City filed its original post-trial motions on December 10 and 11; and this court decided Dirrane on December 31. Based on this chronology, the City insists that we should excuse its lapses

-11-

because it acted celeritously, i.e., it raised the defense on January 15, 2003 (roughly two weeks after Dirrane was decided).

This argument fails. While the raise-or-waive rule is subject to a narrow equitable exception under which "a party cannot be deemed to have waived objections or defenses which were not known to be available at the time they could first have been made," Holzsager v. Valley Hosp., 646 F.2d 792, 796 (2d Cir. 1981), this court has applied that exception with great circumspection. Ordinarily, we will invoke the exception and excuse a party from failing seasonably to have raised a defense only if (i) at the time of the procedural default, a prior authoritative decision indicated that the defense was unavailable, and (ii) the defense became available thereafter by way of supervening authority (say, an overruling of the prior decision or a legislative clarification). See United States v. Lopez-Pena, 912 F.2d 1542, 1549 (1st Cir. 1989). Put another way, we will excuse a party for failing to raise a defense only when the defense, if timely asserted, would have been futile under binding precedent. See id. (refusing to excuse the failure to object when "no binding rule in this circuit . . . necessarily foredoomed an objection"). Other courts have followed this same general praxis. See Curtis Pub. Co. v. Butts, 388 U.S. 130, 143-45 (1967); Holzsager, 646 F.2d at 794-96.

That is not the situation here. Dirrane interpreted the notice provision of the whistleblower statute to require written

notice before the filing of a whistleblower action. <u>Dirrane</u>, 315 F.3d at 73. Although that interpretation is certainly not the only possible reading of the statutory language, <u>see</u>, <u>e.g.</u>, <u>Wagner</u> v. <u>City of Holyoke</u>, 241 F. Supp. 2d 78, 97-99 (D. Mass. 2003), it did not contradict any previously binding precedent. When this case was tried, no court had authoritatively construed this aspect of the notice provision, and the question of whether filing a lawsuit constituted a public disclosure sufficient to trigger the notice requirement was wide open. Under these circumstances, the defense was fairly available. Accordingly, we adhere to prior practice, <u>see</u>, <u>e.g.</u>, <u>United States</u> v. <u>Terry</u>, 240 F.3d 65, 73 (1st Cir. 2001); <u>Lopez-Pena</u>, 912 F.2d at 1549, and hold the City to the natural consequences of its procedural default. The absence of precedent directly on point does not excuse a party's failure to assert an available defense.

The City's last, and most bruited, argument is equally unavailing. It invokes the familiar principle that the absence of subject matter jurisdiction can be raised at any point in the proceedings. <u>See</u>, <u>e.g.</u>, <u>Kontrick</u> v. <u>Ryan</u>, 124 S. Ct. 906, 915 (2004) ("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance."); <u>Mansfield, C. & L. Ry. Co.</u> v. <u>Swan</u>, 111 U.S. 379, 382 (1884) (same); <u>Capron</u> v. <u>Van Noorden</u>, 6 U.S. (2 Cranch) 126, 127 (1804) (same); <u>see</u> <u>also</u> Fed. R.

-13-

Civ. P. 12(h)(3). Building on this solid foundation, the City hypothesizes that a plaintiff's failure to give written notice as required by section 185(c)(1) deprives the court of jurisdiction over any ensuing civil action under the whistleblower statute, see Mass. Gen. Laws ch. 149, § 185(c)(1) (stating that "the protection against retaliatory action . . . shall not apply" to a plaintiff who fails to give the required notice) (emphasis supplied), and therefore can be raised for the first time post-verdict.

We regard it as a bedrock principle that federal courts are courts of limited jurisdiction and, thus, cannot adjudicate a case in the absence of constitutional or congressional authority. Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701 (1982). We have adhered to this principle in finding nonwaivable objections that go to a federal court's power to adjudicate a case. See, e.g., Halleran v. Hoffman, 966 F.2d 45, 47 (1st Cir. 1992); United States v. AVX Corp., 962 F.2d 108, 116 n.7 (1st Cir. 1992). But that principle has no application here: the notice requirement in section 185(c)(1), while obligatory, is not jurisdictional in the requisite sense.

A rule does not become jurisdictional simply because it speaks in mandatory language. See Prou v. United States, 199 F.3d 37, 46 (1st Cir. 1999) (noting that if obligatory language were determinative of waiver, "a whole range of constitutional and statutory provisions employing compulsory language would give rise

-14-

to nonwaivable claims").  Jurisdictional requirements are those that affect a court's constitutional or statutory power to adjudicate the case.  <u>Steel Co.</u> v. <u>Citizens for a Better Envmt.</u>, 523 U.S. 83, 89 (1998).  We conclude, without serious question, that the statutory notice requirement is not jurisdictional in this sense.

Fairly read, the notice requirement is a procedural accouterment — no more, no less.  It sets up a hoop through which a whistleblower plaintiff must jump on his or her way to relief. If the plaintiff fails to attempt the jump, the defendant has available to it an affirmative defense (much like a statute of limitations defense).  And like other affirmative defenses, this defense is fully subject to the ordinary rules of waiver.  <u>Cf.</u> <u>Zipes</u> v. <u>Trans World Airlines, Inc.</u>, 455 U.S. 385, 393 (1982) (holding that the timely filing of an EEOC charge is not a jurisdictional prerequisite to filing a Title VII suit); <u>Bonilla</u> v. <u>Muebles J.J. Alvarez, Inc.</u>, 194 F.3d 275, 278 (1st Cir. 1999) (similar; ADA suit); <u>Vasys</u> v. <u>Metro. Dist. Comm'n</u>, 438 N.E.2d 836, 839 (Mass. 1982) (holding that presentment requirement in the Massachusetts Tort Claims Act is not jurisdictional and can be waived if not timely raised).

Our characterization of the written notice requirement as a waivable, nonjurisdictional affirmative defense jibes with recent Supreme Court precedent.  In <u>Kontrick</u>, the Court considered a

-15-

bankruptcy rule providing that a "complaint objecting to the debtor's discharge . . . shall be filed no later than 60 days after the first date set for the meeting of creditors." Kontrick, 124 S. Ct. at 911 (citing Fed. R. Bankr. P. 4004(a)). A creditor objected to the discharge in an untimely pleading, but the debtor did not raise the timeliness issue until after the bankruptcy court's determination on the merits. The Court rejected the debtor's attempt to characterize the notice requirement as "jurisdictional," holding that despite Rule 4004(a)'s mandatory language, it did no more than provide the debtor with an affirmative defense to an untimely complaint. Id. at 916-18. Like other affirmative defenses, the defense could be forfeited if not raised at the proper time. Id.

Characterizing the written notice requirement as a waivable, nonjurisdictional affirmative defense is also consistent with its underlying purpose. We recently observed that the requirement "gives the employer one last chance to correct wrongdoing before the employee goes public with his accusations." Dirrane, 315 F.3d at 73. As such, the requirement inures to the benefit of the employer. We see no reason why an employer cannot, consistent with the statute, choose to relinquish that protection in a given case. See, e.g., Prou, 199 F.3d at 47 ("Because [the section's] temporal requirements exist for the defendant's benefit,

it makes perfect sense to give the defendant the power to waive (and the obligation not to forfeit) strict compliance with them.").

The short of it is that the City neglected to raise the absence of advance written notice at any point prior to its post-verdict motion. It has offered no plausible basis on which that neglect might be excused. Accordingly, we sustain the lower court's determination that the City waived its objection to the absence of the notice required by Mass. Gen. Laws ch. 149, § 185(c)(1).[2]

## IV. PREJUDGMENT INTEREST

The district court added $41,278 in prejudgment interest to the jury's verdict. The City moved to strike the award on the ground that the whistleblower statute does not authorize prejudgment interest. The district court rebuffed this challenge.

---

[2]The parties have briefed this issue as a matter of waiver vel non, and we have honored their choice of phrase. We recognize, however, that the City's failure to raise the defense might more appropriately be termed a forfeiture. See United States v. Olano, 507 U.S. 725, 733 (1993) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.") (citation and internal quotation marks omitted); United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002) (same), cert. denied, 538 U.S. 937 (2003). The distinction can have practical implications because forfeited arguments, unlike waived arguments, may be subject to plain error review. See Olano, 507 U.S. at 733-34; Rodriguez, 311 F.3d at 437. Here, however, this difference is of no moment. Under plain error review, an error will not be recognized unless, among other things, it "seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). The omission of advance written notice had no impact whatsoever on the fairness, integrity, or public repute of the proceedings in this case.

The City's assignment of error poses an isthmian question of statutory interpretation: does the Massachusetts whistleblower statute authorize the automatic addition of prejudgment interest to damage awards? Questions about whether a statute authorizes certain types of damages in particular instances are quintessentially legal in nature, so this question engenders de novo review. Protective Life Ins. Co. v. Dignity Viatical Sett. Partners, 171 F.3d 52, 54 (1st Cir. 1999); Correa, 69 F.3d at 1195.

Our starting point is, of course, the text of the statute. Plumley v. S. Container, Inc., 303 F.3d 364, 369 (1st Cir. 2002); Rambert v. Commonwealth, 452 N.E.2d 222, 223-24 (Mass. 1983). When the statutory language "points unerringly in a single direction, and produces an entirely plausible result, it is unnecessary — and improper — to look for other signposts." United States v. Charles George Trucking Co., 823 F.2d 685, 688 (1st Cir. 1987). This is such a case.

Section 185(d) delineates the remedies available to whistleblower plaintiffs.[3] The section is structured in two tiers.

_____

[3]The section reads:

Any employee or former employee aggrieved of a violation of this section may, within two years, institute a civil action in the superior court. Any party to said action shall be entitled to claim a jury trial. All remedies available in common law tort actions shall be available to prevailing plaintiffs. These remedies are in addition to any legal or equitable relief provided herein. The court may: (1) issue temporary restraining orders or preliminary or permanent

-18-

The first tier declares that "[a]ll remedies available in common law tort actions shall be available to prevailing [whistleblower] plaintiffs." The second tier adds a list of additional remedies that the court may, in its discretion, award to prevailing plaintiffs. This list includes such perquisites as injunctive relief, multiple damages, and attorneys' fees.

We think it is plain that the first tier encompasses prejudgment interest. The language is direct and unequivocal, and Massachusetts law grants prejudgment interest, as a matter of right, to prevailing plaintiffs "[i]n any action in which a verdict is rendered or a finding made . . . for pecuniary damages for personal injuries," directing the clerk of court to add such interest to the amount of damages "at the rate of twelve per cent per annum from the date of commencement of the action." Mass. Gen. Laws ch. 231, § 6B.

Section 6B is broad in its scope. It applies to compensatory damage awards in all tort and tort-like causes of action for, inter alia, injuries to the person. See Blockel v.

---

injunctions to restrain continued violation of this section; (2) reinstate the employee to the same position held before the retaliatory action, or to an equivalent position; (3) reinstate full fringe benefits and seniority rights to the employee; (4) compensate the employee for three times the lost wages, benefits and other remuneration, and interest thereon; and (5) order payment by the employer of reasonable costs, and attorneys' fees.

Mass. Gen. Laws ch. 149, § 185(d).

J.C. Penney Co., 337 F.3d 17, 29-30 & n.4 (1st Cir. 2003) (employment discrimination); Patry v. Liberty Mobilhome Sales, Inc., 475 N.E.2d 392, 394-95 (Mass. 1985) (unfair or deceptive trade practices); see also Shawmut Cmty. Bank v. Zagami, 586 N.E.2d 962, 966 (Mass. 1992) (collecting cases). Moreover, its command that prejudgment interest shall be added at the specified rate applies unreservedly to all such awards.  See Griffin v. Gen. Motors Corp., 403 N.E.2d 402, 406 (Mass. 1980). Viewed in this light, there can be no doubt but that, in the idiom of section 185(d), prejudgment interest is a "remed[y] available in common law tort actions" in Massachusetts. Consequently, the plain meaning of section 185(d) indicates that the plaintiff was entitled to prejudgment interest on the award of compensatory damages.

We have every reason to believe that the drafters of section 185(d) intended this straightforward result. Section 6B was in force long before the legislature passed the whistleblower statute. Thus, it seems fair to presume that the legislature was aware of the interest-on-verdicts statute when it enacted the whistleblower law and that the legislature intended the natural consequences of the language that it used in crafting the newer statute. Charland v. Muzi Motors, Inc., 631 N.E.2d 555, 557 (Mass. 1994).

The task of statutory construction often is informed by reading the whole of a statute, Plumley, 303 F.3d at 370, and an

-20-

holistic appraisal of section 185(d) strongly supports the conclusion that prevailing whistleblower plaintiffs are entitled to prejudgment interest on compensatory damage awards. Section 185(d)'s overall structure indicates the drafters' intent to provide successful whistleblower plaintiffs with remedies above and beyond those generally available to tort plaintiffs. A good example is the language that gives the trial court the authority to order reinstatement — a remedy not commonly available to tort plaintiffs. See Rosario-Torres v. Hernandez-Colon, 889 F.2d 314, 321 (1st Cir. 1989) (en banc) (describing reinstatement as an equitable remedy); see also Dan B. Dobbs, 1 The Law of Torts § 1 (2001); 2 op. cit. supra §§ 377, 455. Another example is the provision that gives the trial court discretion to order payment of reasonable attorneys' fees. That contradicts the American rule, followed in Massachusetts, that each party ordinarily must defray his or her own legal expenses. See, e.g., Waldman v. Am. Honda Motor Co., 597 N.E.2d 404, 406-07 (Mass. 1992). Depriving prevailing whistleblower plaintiffs of a remedy — prejudgment interest — that is broadly available to prevailing tort plaintiffs in Massachusetts is flatly inconsistent with this philosophy.

In lobbying for a different construction of section 185(d), the City points to the second tier's remedial array. The statutory language authorizing an award of "three times the lost wages, benefits and other remuneration, and interest thereon,"

Mass. Gen. Laws ch. 149, § 185(d)(4), shows — or so the City says — that the legislature did not intend to authorize an award of interest in any other circumstance. That is resupinate reasoning, and we reject it.

Under the City's balkanized reading of section 185(d), prejudgment interest would be available on punitive damage awards but unavailable on compensatory damage awards. This would stand the usual rule on its head. In tort cases, Massachusetts mandates prejudgment interest on compensatory damages but prohibits prejudgment interest on punitive damages.[4] See, e.g., Mirageas v. MBTA, 465 N.E.2d 232, 236 (Mass. 1984). Courts should not strain to interpret a statute in a way that would produce an entirely illogical result, United States v. O'Neil, 11 F.3d 292, 297 (1st Cir. 1993); 2A Norman J. Singer, Sutherland Statutory Construction § 45.12 (6th ed. 2000), and we decline to do so here. Section 185(d)(4)'s authorization of interest on multiple damages is most naturally read as an expansion of the usual rule authorizing prejudgment interest only on compensatory damages, not as a truncation of that rule.

---

[4]This rule is based on sound policy. The fundamental purpose of prejudgment interest is to ensure that compensatory damages make an injured party whole. Conway v. Electro Switch Corp., 523 N.E.2d 255, 258 (Mass. 1988). Such interest is inappropriate on punitive damages, however, because it is not meant "to penalize the wrongdoer or to make the damaged party more than whole." McEvoy Travel Bureau, Inc. v. Norton Co., 563 N.E.2d 188, 196 (Mass. 1990).

As a fallback, the City says that the quoted language must at least mean that interest is restricted to economic damages. Since the jury failed to indicate what portion of the $90,000 damage award was intended as compensation for economic loss (as opposed to compensation for emotional distress), the district court should not have tacked on prejudgment interest.

This argument lacks force. As discussed above, we find the authority for prejudgment interest awards not in section 185(d)(4), but, rather, in the general "first tier" language of section 185(d), which provides prevailing whistleblower plaintiffs with "[a]ll remedies available in common law tort actions." Because that is so, prejudgment interest is available — as in any Massachusetts tort action — on both economic and non-economic damages (save only punitive damages). See, e.g., Wynn & Wynn, P.C. v. MCAD, 729 N.E.2d 1068, 1072 n.3 (Mass. 2000). We do not believe that section 185(d)(4) sensibly can be read to restrict the operation of this general rule.

In a last-ditch effort to cut its losses, the City asseverates that the granting of prejudgment interest flouts the fundamental principle that waivers of sovereign immunity are to be construed narrowly. This asseveration contains more cry than wool.

Massachusetts municipalities historically have enjoyed sovereign immunity shielding them from liability for the tortious acts of their officers or employees. See, e.g., Whitney v. City of

<u>Worcester</u>, 366 N.E.2d 1210, 1213-14 (Mass. 1977). But municipalities are creatures of the state, and the state legislature has the right to strip away municipal immunity in whole or in part. <u>Bain</u> v. <u>City of Springfield</u>, 678 N.E.2d 155, 159-60 (Mass. 1997). The Massachusetts whistleblower statute does just that: it gives aggrieved parties the right to institute suits for damages against, inter alia, cities and towns. Mass. Gen. Laws ch. 194, § 185(a)(2).

Of course, statutes that are in derogation of sovereign immunity should be construed narrowly. <u>See</u> <u>Woodbridge</u> v. <u>Worcester State Hosp.</u>, 423 N.E.2d 782, 784-85 (Mass. 1981); <u>see</u> <u>also</u> <u>In re Perry</u>, 882 F.2d 534, 538 (1st Cir. 1989) (noting that when a statute constitutes a waiver of sovereign immunity, "its words must be narrowly construed and its borders rigorously observed"). Thus, courts must be careful not to extend a plaintiff's right to recover against a sovereign "beyond those [rights] expressly conferred by statute." <u>Broadhurst</u> v. <u>Dir. of Div. of Emp. Sec.</u>, 369 N.E.2d 1018, 1023 (Mass. 1977) (quoting <u>Gurley</u> v. <u>Commonwealth</u>, 296 N.E.2d 477, 481 (Mass. 1973)).

That imperative, however, merely commemorates a background rule of construction. It does not make the sovereign bulletproof, nor does it require that a court abandon the usual tools of the interpretive trade. Whatever the background rule of construction, legislative intent, as expressed in the text of the

-24-

statute, remains the key determinant of the scope of a waiver of sovereign immunity. <u>United States</u> v. <u>Idaho</u>, 508 U.S. 1, 6-7 (1993); <u>Bain</u>, 678 N.E.2d at 160.

Here, that intent is manifest. As we already have explained, reading the statute as the City suggests would ignore the plain meaning of the words chosen by the drafters, distort the statutory structure, and countervail the legislature's discernible intent. To impose such a reading in the name of narrow construction would give narrow construction a bad name.

## V. CONCLUSION

We need go no further. For the reasons elucidated above, we conclude that the district court properly denied both the City's motion for relief from judgment and its motion to strike the award of prejudgment interest.

**<u>Affirmed</u>**.