# United States Court of Appeals
## For the First Circuit

No. 20-1305

ALEXIS TUBENS,

Plaintiff, Appellant,

v.

JOHN DOE; WILLIAM B. EVANS, in his official capacity as
Commissioner of the Boston Police Department; CITY OF BOSTON;
KEVIN SULLIVAN, individually and in his official capacity as a
police officer; DOMENIC COLUMBO, individually and in his
official capacity as a police officer,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Leo T. Sorokin, U.S. District Judge]

Before

Thompson, Boudin, and Kayatta,
Circuit Judges.

Mark W. Miller on brief for appellant.
Eugene L. O'Flaherty, Corporation Counsel, City of Boston Law
Department, Nieve Anjomi, Senior Assistant Corporation Counsel,
City of Boston Law Department, and Edward F. Whitesell, Jr.,
Assistant Corporation Counsel, City of Boston Law Department on
brief for appellees.

October 1, 2020

**BOUDIN, <u>Circuit Judge</u>.** This case arises out of an alleged unlawful arrest that took place May 2, 2014. Alexis Tubens alleges that on that night, he and a friend drove to a Shell Station in Boston. When they arrived, several police cruisers converged on their car. Between seven and ten officers got out of the cruisers, some of them with their guns unholstered and pointed at Tubens.

The officers removed Tubens from his car, handcuffed him, and searched both his person and his car. They held him for a total of about thirty minutes before releasing him, having found no evidence of criminal activity.

On May 1, 2017, the last day of the three-year statute of limitations period, Tubens filed suit in Suffolk Superior Court under 42 U.S.C. § 1983 and the Massachusetts Tort Claims Act, alleging (among other things) false arrest and imprisonment; excessive force, harassment, and intimidation; and reckless and/or intentional infliction of emotional distress. He named the City of Boston, then-BPD Commissioner William Evans, and several John Doe officers as defendants.

On July 28, 2017, the City removed the case to federal court. On July 31, 2017, the last day on which he was permitted to serve the summons under Massachusetts Rule of Civil Procedure 4, Tubens sought (and eventually received) permission to extend the time for service by thirty days. On August 14, the City and

Evans moved to dismiss the claims against them. Tubens failed to respond to the motion until the district court issued an order to show cause by September 26. When Tubens did respond, on October 2, the district court gave him until October 18 to respond to the City and Evans' motion to dismiss. Tubens opposed that motion and filed a motion for leave to amend his complaint. The district court dismissed the City and the Commissioner (leaving only the Doe defendants) but allowed Tubens an opportunity to conduct discovery to identify the officers present at the incident described in the complaint. This discovery commenced in November 2017.

The City's initial disclosures identified defendants Sullivan and Columbo as having been "present during the Plaintiff's alleged incident." Record Appendix ("RA") 206. Tubens deposed Sullivan in April 2018. At Sullivan's deposition, he testified that he and Columbo had been on the scene with their weapons drawn.

Tubens did not seek to amend his complaint to identify Sullivan and Columbo as defendants at that time, despite Local Rule 15.1(a)'s admonition that "[a]mendments adding parties shall be sought as soon as an attorney reasonably can be expected to have become aware of the identity of the proposed new party."

After some delay by Tubens, the district court issued an order giving Tubens until May 15, 2018 to amend his complaint and identify the John Doe officers. On May 15, Tubens still had not

- 4 -

moved to amend his complaint, but he did move to compel Columbo's appearance at deposition, asserting that his original deposition had been cancelled at the request of counsel for the City, and that Tubens' counsel had been unable to confirm his availability through either the City's counsel or Columbo's private counsel since then.

All told, Tubens sought and received seven separate continuances of the deadline to amend his complaint, for reasons including his counsel's ill health, difficulty in deposing Columbo, and other delays in conducting and receiving discovery.

Tubens eventually took Columbo's deposition on June 21, 2019 and moved to amend his complaint to add Columbo and Sullivan as defendants on July 29, the last day of the seventh extended deadline. The City, still nominally in the action, opposed the motion. The district court allowed the motion to add Columbo and Sullivan as defendants but noted that "in light of the amount of time that has passed and that the two officers were identified long ago in discovery[, ]Plaintiff is at the outer bounds of the time period for relating back." RA 246.

On October 8, the district court gave Tubens fourteen days to serve the amended complaint on Sullivan and Columbo, making the deadline October 22, 2019. On October 9, Tubens' attorney spoke with the City's attorney about accepting service on behalf of the defendants. After that conversation, Tubens' attorney made

no further attempt to serve either Sullivan or Columbo before the October 22 deadline.

On October 24, defense counsel called Tubens' attorney to confer, pursuant to Local Rule 7.1(a)(2), about a motion to dismiss they would file later that day and reminded Tubens' attorney of the October 22 deadline. Tubens eventually served Columbo on October 31, but he never properly served Sullivan.

Tubens moved to extend the time for service on November 3, 2019. Under Federal Rule of Civil Procedure 6(b)(1)(B), a court may, for good cause, allow an extension "on motion made after the time has expired if the party failed to act because of excusable neglect." In his motion, Tubens argued that his failure to serve the defendants by October 22 was excusable neglect caused by an "unexpected and unprecedented loss of staff." RA 268. The City, on behalf of Columbo and Sullivan (who, at this point, were still not parties to the case), opposed.

The district court dismissed the complaint as to Sullivan, but, noting that Columbo had been properly served before the proposed extended deadline, allowed Columbo to respond to Tubens' motion to extend time. Columbo opposed the motion, arguing that Tubens' counsel's loss of staff was not sufficient to constitute excusable neglect.

Tubens responded, citing for the first time Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,

in which the Supreme Court articulated four factors relevant to determining whether "excusable neglect" exists. See 507 U.S. 380, 395 (1993). The district court concluded that Tubens' counsel's increased workload due to his loss of staff did not transform his failure to meet the October 22 deadline for service into excusable neglect. In an order that did not cite Pioneer or its four factors, the district court dismissed Columbo and closed the case. Tubens timely appealed.

On appeal, Tubens claims that the district court abused its discretion in concluding that his attorney's failure to serve Columbo on time was not due to excusable neglect. Tubens also argues that the district court abused its discretion in dismissing Tubens' case with prejudice.

Columbo argues that the district court did not abuse its discretion by denying Tubens additional time to serve his Second Amended Complaint. Alternatively, he argues that this Court can affirm the dismissal of Tubens' case on the ground that he should not have been permitted to amend his complaint to name Columbo and Sullivan as defendants.

Excusable Neglect. Tubens' main argument is that the district court misapplied the standard for determining whether his failure to timely serve the Second Amended Complaint was "excusable neglect" under Federal Rule of Civil Procedure 6(b)(1)(B). The district court's ruling on this issue is reviewed for abuse of

- 7 -

discretion.  Dimmitt v. Ockenfels, 407 F.3d 21, 23 (1st Cir. 2005). Although this is a deferential standard, the district court's discretion is not absolute.  "Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." Indep. Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co., 864 F.2d 927, 929 (1st Cir. 1988).

The Supreme Court in Pioneer observed that the determination of whether a party's actions constitute excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."  507 U.S. at 395.  Relevant considerations include "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."  Id.

Although the Court in Pioneer was interpreting the phrase in the context of Bankruptcy Rule 9006(b), this court and others have applied the Pioneer factors to "excusable neglect" arguments arising under various provisions of the Federal Rules, including Rule 6(b).  See, e.g., Pratt v. Philbrook, 109 F.3d 18, 19 n.1 (1st Cir. 1997); Dimmitt, 407 F.3d at 24.

- 8 -

Tubens first argues that, while the district court examined the third Pioneer factor ("the reason for the delay"), it neglected to weigh the other three factors at all.  Tubens cites two out-of-circuit cases for the proposition that the failure to apply the Pioneer factors to an excusable neglect determination (both under Federal Rule of Civil Procedure 60(b)) constitutes abuse of discretion.  See Brief for the Plaintiff-Appellant Alexis Tubens at 14 ["Pl.'s Br."] (citing Lemoge v. United States, 587 F.3d 1188, 1193 (9th Cir. 2009) and Cheney v. Anchor Glass Container Corp., 71 F.3d 848, 850 (11th Cir. 1996)).

This court, in contrast, has not always enumerated each Pioneer factor and analyzed them separately.  See, e.g., United States v. Union Bank for Sav. & Inv. (Jordan), 487 F.3d 8, 24 (1st Cir. 2007) (citing all four factors but analyzing only reason for delay and prejudice); Aguiar-Carrasquillo v. Agosto-Alicea, 445 F.3d 19, 28 (1st Cir. 2006); Dimmitt, 407 F.3d at 24 (characterizing Pioneer as "enumerating some factors pertinent to [the] 'excusable neglect' inquiry" and treating the reason for delay as "the most critical").

Further, this court has noted that "[w]hile each potential factor should be weighed, there is ultimately a thumb on the scale because '[w]ithin the constellation of relevant factors, the most important is the reason for the particular oversight.'"  Skrabec v. Town of N. Attleboro, 878 F.3d 5, 9 (1st

- 9 -

Cir. 2017) (quoting Nansamba v. N. Shore Med. Ctr., Inc., 727 F.3d 33, 39 (1st Cir. 2013)).

In Pratt, this court remanded a case so that the district court could apply the Pioneer factors to an excusable neglect claim under Federal Rule of Civil Procedure 60(b). 109 F.3d at 22-23. However, in Pratt, "[a]t no point in proceedings before the trial court was the decision of the Supreme Court in Pioneer cited or its implications argued." Id. at 22. Therefore, the trial court "was never afforded the opportunity to evaluate the question in light of Pioneer" and the record on the issue was undeveloped since "the areas for development that Pioneer identifies . . . were not explored." Id. In that context, this court determined that the district court should be given the opportunity to apply the Pioneer factors in the first instance, "particularly if there is a reasonable probability that a different outcome would result." Id. at 20.

This case is different. First, neither party in Pratt had brought Pioneer to the district court's attention at all. Here, Tubens cited the Pioneer factors in his reply to the City's Opposition to his motion to extend. See RA 309 & n.1. And, as Tubens points out, the standard he cited in his original motion to extend, though technically inapplicable in the civil context, employs substantially similar factors. See id.; RA 267 (listing "(1) the nature of the case (2) the degree of tardiness (3) the

- 10 -

reasons underlying the tardiness (4) the character of the omission (5) prejudice to the non-moving party (6) the effect of granting or denying the motion on the administration of justice, and (7) whether the belated filing would be more than an empty exercise.") (citing United States v. Roberts, 978 F.2d 17, 21-22 (1st Cir. 1992)).

Tubens argued in his moving papers that the delay was relatively short (within ten days of the court's fourteen-day deadline), it was not a result of bad faith on Tubens' part, and it would not prejudice Columbo. Those arguments directly apply the Pioneer factors. Further, the City and Columbo each cited several cases in which this court analyzed "excusable neglect" under Pioneer. The district court relied on those same cases in its order.

Second, this court has repeatedly noted that "[t]he four Pioneer factors do not carry equal weight; the excuse given for the late filing must have the greatest import. While prejudice, length of delay, and good faith might have more relevance in a closer case, the reason-for-delay factor will always be critical to the inquiry." Hosp. del Maestro v. NLRB, 263 F.3d 173, 175 (1st Cir. 2001) (quoting Lowry v. McDonnell Douglas Corp., 211 F.3d 457, 463 (8th Cir. 2000)). "Even where there is no prejudice, impact on judicial proceedings, or trace of bad faith, '[t]he favorable juxtaposition of the[se] factors' does not excuse

- 11 -

the delay where the proffered reason is insufficient." In re Sheedy, 875 F.3d 740, 744 (1st Cir. 2017) (quoting Hosp. del Maestro, 263 F.3d at 175).

This is not a close case. Tubens says the reason for his delay was that his counsel suffered a "sudden, major, and unexpected loss of staff" and, in picking up the slack, he lost track of the October 22 deadline. Pl.'s Br. at 20. The district court addressed this argument in depth, citing several cases for the proposition that "busyness and confusion over filing dates by counsel [is] inadequate to support a finding of excusable neglect." RA 332 (quoting Deo-Agbasi v. Parthenon Grp., 229 F.R.D. 348, 352 (D. Mass. 2005)). Further, it correctly noted that "the Court must 'give due regard to the totality of the relevant circumstances surrounding the movant's lapse.'" RA 332 (quoting Bennett v. City of Holyoke, 362 F.3d 1, 5 (1st Cir. 2004)).

As the district court observed, Tubens' "counsel's actions [came] after numerous delays and failures to comport with the Court's procedural rules." Id. at 333. The district court reasonably determined that Tubens' counsel's "lack of diligence" at "numerous junctures" in this case, coupled with the unpersuasive reason for delay in serving Columbo, was sufficient to outweigh Tubens' arguments for another extension. RA 333.

In addition to his argument that the district court did not apply all the Pioneer factors, Tubens claims that it misapplied

- 12 -

the parts of the test that it did explicitly address. Specifically, Tubens argues that the district court failed to give adequate weight to the reason for the delay by treating Tubens' counsel's "sudden, major, and unexpected loss of staff" like "ordinary busyness." Pl.'s Br. at 20. Pioneer itself disposes of a like argument. See 507 U.S. at 384, 398.

Dismissal with Prejudice. When determining whether a dismissal with prejudice is warranted, this court considers all aspects of the case including "the severity of the violation, the legitimacy of the party's excuse, repetition of violations, the deliberateness vel non of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of lesser sanctions." Benitez-Garcia v. Gonzalez-Vega, 468 F.3d 1, 5 (1st Cir. 2006) (quoting Robson v. Hallenbeck, 81 F.3d 1, 2 (1st Cir. 1996)).

Because "case management is a fact-specific matter within the ken of the district court, reviewing courts have reversed only for a clear abuse of discretion." Robson, 81 F.3d at 2-3. "[W]e must fairly balance the court's venerable authority over case management with the larger concerns of justice, including the strong presumption in favor of deciding cases on the merits." Malot v. Dorado Beach Cottages Assocs., 478 F.3d 40, 43 (1st Cir. 2007).

Dismissal with prejudice is justified when a party repeatedly fails to comply with orders of the court, including court-ordered deadlines. See Serra-Lugo v. Consortium-Las Marias, 271 F.3d 5, 6 (1st Cir. 2001) (per curiam). "Where despite a warning, a party's neglect is extended and prejudicial to the court's ability to manage its docket, a court may dismiss a case with prejudice without first exhausting milder sanctions." Drysdale, Inc. v. Wolfram, 2009 WL 189959, at *2 (D. Mass. Jan. 27, 2009) (citing Figueroa Ruiz v. Alegria, 896 F.2d 645, 649 (1st Cir. 1990)).

Here, Tubens' failure to comply with the district court's October 8th order comes after a long history of delay. For the reasons enumerated in the district court's order denying Tubens' motion to extend time, the district court acted well within its discretion to dismiss Tubens' case with prejudice.

Affirmed.